## GARDNER v. SMITH.
### No. 4079.

Court of Civil Appeals of Texas. Beaumont.
July 3, 1942.

Smith, Smith & Boyd, of Beaumont, for appellant.

George A. Weller, of Beaumont, for appellee.

WALKER, Chief Justice.

This appeal was prosecuted from the final judgment of the County Court of Jefferson County, at Law, Jefferson County, Texas, in favor of appellee, W. A. Smith, against appellant, H. W. Gardner. The following are the basic facts of the case. The Texas National Bank of Beaumont went into voluntary liquidation on or about the 22nd day of April, 1932. Thereafter, the stockholders appointed the liquidating committee of the bank as the liquidating agent for the bank. Appellant served as a member of the liquidating committee from the time it was organized until April 15, 1933, when appellee was appointed to fill the vacancy caused by his resignation. Appellee served as a member of the liquidating committee from the date of his appointment to the date of this trial, and at all times was fully cognizant of the

financial affairs of the bank and of the business transacted by the liquidating committee. Certain creditors of the bank, hereinafter referred to as "contributors," advanced large funds to the committee to assist them in liquidating the bank on the agreement that these funds were to be repaid with interest provided the assets of the bank were sufficient. The members of the committee accepted their appointments and rendered their services from the date of their appointment without any agreement, express or implied, that they would be paid for their services. This committee rendered most efficient service to the bank, to the contributors and to the stockholders. Prior to December 23, 1937, the contributors in appreciation of the services voluntarily rendered by the committee voted to pay the committee "as compensation" one-half of the interest which had accrued on the funds advanced by them on condition that their advancements should be first paid. At the time the contributors voted this resolution the bank was still indebted to them on their advancements, and also to other persons, and at that time the possibility that the contributors would be paid was "indefinite and uncertain." Appellant, as a member of the committee, was entitled to a proportionate part of the compensation voted by the contributors, based on his time of service on the committee. Prior to December 23, 1937, the members of the committee had discussed among themselves the subject of asking additional compensation out of the assets from the stockholders "if and when all creditors of the bank were paid." Prior to December 23, 1937, appellant, through his agent, R. Gray Powell, proposed to sell to appellee his interest in the fund voted by the contributors. Mr. Powell succeeded in selling appellant's interest in this fund to appellee, and as evidencing the sale appellant executed to appellee on the cash consideration of $400, which was paid by appellee, the following contract:

"The State of Texas:
"County of Jefferson:

Whereas, H. W. Gardner, of Jefferson County, Texas, has heretofore served as a part time member of the Liquidating Committee of The Texas National Bank of Beaumont, and as compensation for services rendered by the Liquidating Committee, to contributors 'to a certain fund' allowed the Liquidating Committee compensation equal to one-half of the interest due them by the Texas National Bank of Beaumont, which compensation is a preferred claim on the assets of The Texas National Bank of Beaumont; and,

"Whereas, the said compensation has not been paid in full, the said H. W. Gardner desires to sell, transfer and convey all of his remaining interest in and to said compensation above mentioned; now, therefore,

"Know all men by these presents: That I, H. W. Gardner, of Jefferson County, Texas, for and in consideration of the sum of Four Hundred ($400.00) Dollars cash in hand paid by W. A. Smith, do hereby grant, sell, set over, deliver and convey unto the said W. A. Smith all the remaining unpaid balance due me as a part time member of the Liquidating Committee of The Texas National Bank of Beaumont, so that from and after this date, I will have no further interest in and to said compensation, but all moneys accruing to me by virtue of services rendered by me as a member of the Liquidating Committee shall be owned by W. A. Smith, who is hereby authorized and directed to collect same.

"I hereby covenant that I am the true and lawful owner of said claim, and do hereby warrant that the said claim, nor any part thereof, has been assigned, pledged or mortgaged by me.

"Witness my signature, this the 23 day of December.

"H. W. Gardner." (signed)

Appellee had nothing to do with preparing this contract but it was drawn "at the instance and request of H. W. Gardner, or by someone acting for him." Appellee, under this contract, received from the fund voted by the contributors about $600. On November 5, 1941, nearly four years after the execution of the contract, the stockholders of the bank voted to pay the committee compensation in the amount of $30,000, to be distributed on the basis of the time of service rendered by the committee. Appellant's interest in that fund, on the basis of his time of service, was $420.59. The stockholders' fund was voted by the stockholders as a gratuity to the committee; the committee had served the stockholders in liquidating the bank without any promise or agreement, express or implied, that they would be paid anything whatever for their services. At the time appellant executed to appellee the contract given above, the fund voted by the stock-

holders was not in existence, and was not in contemplation of appellant and appellee at the time they made their contract. In making their contract appellant and appellee had in mind only the fund voted by the contributors, and the possibility that the stockholders might vote to appellant additional compensation constituted, in fact, no part of the consideration for the $400 paid by appellee to appellant.

Appellee demanded that he be paid the part of the fund, accruing to appellant, voted by the stockholders to the liquidating committee, which request was refused. Thereupon he instituted this suit in county court against appellant, praying for judgment against him for his interest in that fund. As a basis for relief he plead generally the facts stated above, basing his demand on the contract. As an alternative plea he alleged that if the contract did not in fact include the fund voted by the stockholders then it did not express the real contract and its execution was brought about by mutual mistake. On his alternative allegation he prayed that the contract be reformed to evidence the real intention of the parties in its execution. On trial to the court without a jury, judgment was in favor of appellee against appellant for the $420.59 sued for. In support of the judgment, the trial court filed conclusions of fact from which, for the most part, we have taken the statement of the case.

### Opinion.

The primary obligation of the courts in construing contracts is to ascertain and effectuate, if possible, the mutual intention of the parties, "as of the time the contract was made * * *." 17 C.J. S. 689, subject, Contracts, § 295. In the contract before us we have recitals designating a specific fund as the subject of the contract. These recitals are followed by the operative clause which contains the language "that from and after this date, I will have no further interest in and to said compensation (referring to the fund voted by the contributors), *but all moneys accruing to me by virtue of services rendered by me as a member of the liquidating committee shall be owned by W. A. Smith, who is hereby authorized and directed to collect same.*" Appellee invokes this clause which we have italicized in support of his judgment. The lower court erred in accepting and effectuating appellee's construction of the contract.

The principles of law governing the construction of the contract in issue are thus stated by 17 C.J.S., page 733, subject, Contracts, § 314:

"§ 314. Recitals. As a general rule, recitals in a contract will not control the operative clauses thereof unless the latter are ambiguous; but they may be looked to in determining the proper construction of the contract and the parties' intention.

"Recitals in a contract should be reconciled with the operative clauses, and given effect, so far as possible; but where the recital is so inconsistent with the covenant or promise that they cannot be harmonized, the latter, if unambiguous, prevails. In other words, recitals, especially when ambiguous, cannot control the clearly expressed stipulations of the parties; and where the recitals are broader than the contract stipulations, the former will not extend the latter.

"While recitals, as a general rule, are not strictly any part of the contract, unless it appears that the parties intended them to be such, they may be looked to in determining the proper construction of the contract or the intention of the parties, at least when the language expressing their contractual relations is ambiguous, uncertain, or indefinite. *So, if the recitals are clear and the operative part is ambiguous, the recitals* govern the construction. [Italics ours.] Where the language of the covenants or promises in a contract is more comprehensive than that of the recitals, the intent is to be ascertained from a consideration of the entire instrument."

While recitals, as stated in the proposition quoted, are not "strictly any part of the contract," yet they are a part of the contract when it appears that the parties intended them to be such. In executing the contract in issue, on the undisputed facts, the recitals constituted one of its essential elements, in that it designated the fund which appellant was assigning to appellee, and on the undisputed evidence no other fund was included. Therefore, the recitals must be looked to to ascertain the intent of the parties in executing the contract, as of the date it was executed. The recitals are clear, designating without ambiguity the fund involved in the contract, and therefore the operative part of the contract must be governed by its recitals.

When construed in the light of the undisputed facts, the operative clause did not include the fund voted by the stockholders.

The operative clause, even on its broadest construction, included only "compensation" earned by appellant. On the date the contract was executed the only compensation which had accrued to appellant, or which within the contemplation of the parties would accrue to him, for the services rendered by him as a member of the liquidating committee was the fund voted by the contributors. The fund later voted by the stockholders did not *accrue* to appellant for services rendered by him, but this fund, as stated above, was a pure gratuity and did not accrue from any obligation on the part of the stockholders to pay it but was simply a bounty of appreciation.

 There is not a scintilla of evidence in the record to support any conclusion of fact nr law that the fund voted by the stockholders was in contemplation of the parties in the execution of the contract. Therefore, there is no basis in fact for its reformation but it must be construed as written. As we have construed it, appellee acquired no interest in the funds voted by the stockholders four years after its execution and delivery.

It follows that the judgment of the lower court in favor of appellee must be reversed and judgment here rendered in favor of appellant that he go hence without day and recover his costs.

Reversed and rendered.