Richmond

## WILLIAM H. DUVALL, ET AL.

v.

## FORD LEASING DEVELOPMENT CORPORATION

June 8, 1979.

Record No. 771300.

Present: All the Justices.

*Henry C. Mackall (Douglass S. Mackall; Glenn H. Silver,* on briefs), for appellants.

*W. Curtis Sewell (Richard F. Williamson; Thomas & Sewell, P.C.,* on brief), for appellee.

CARRICO, J., delivered the opinion of the Court.

This case involves questions concerning both implied and express restrictive covenants and their applicability to prevent

commercial use of all or part of a parcel of land derived from a larger tract, the balance of which is restricted and developed exclusively for residential purposes.

The questions arose from the filing by the complainants, William H. Duvall and his wife, Mildred, and others,[1] owners of lots in the Belle Haven community of Fairfax County, of a bill of complaint for injunctive relief against the defendant, Ford Leasing Development Corporation. The bill alleged that the lots owned by the complainants and a parcel owned by the defendant all were subject to restrictions limiting use of the property to residential purposes. The bill alleged further that the defendant, in violation of the restrictions, proposed to construct upon its land an automotive sales and service center.

Answering the bill, the defendant admitted that it proposed to use its land as indicated, but it denied that any restriction prohibited the use. Upon the issue thus joined, the chancellor heard the matter, found the defendant's land "not to be subject to the restrictive covenants," and dismissed the complainants' bill.

The record shows that the lots owned by the complainants and the parcel owned by the defendant are parts of a tract originally containing 222 acres located in the eastern portion of Fairfax County, just south of the City of Alexandria. In 1925, Belle Haven Realty Corporation acquired the 222-acre tract and began to subdivide it and develop Belle Haven, which has become a desirable and exclusive residential community.

The realty corporation developed the land in stages. Between 1925 and 1952, the corporation recorded a number of deeds of dedication and plats, subdividing different portions of the tract into several numbered sections of Belle Haven. Each deed of dedication placed certain express restrictions upon the land therein subdivided. Pertinent here, the restrictions forbade commercial use of the land. By 1952, the realty corporation had conveyed, subject to restrictions, more than 200 lots to various purchasers.

In August, 1952, as part of its corporate dissolution, the realty corporation conveyed to Helen Olmi the remaining portion of the

---

[1]The other complainants are William E. Weesner, Irene S. Weesner, Daniel M. Roche, Erma Roche, Frederick A. Ballard, Mary Elizabeth Ballard, Henry W. Anderson, Eliza Anderson, Howard L. Kitzmiller, Shirley P. Kitzmiller, Timothy E. Rowan, Joan Rowan, William F. Gregory, and Millie Gregory.

Belle Haven tract, comprising 74.4685 acres, including some land subdivided and restricted by the realty corporation. The deed provided that an unsubdivided 6.8185-acre parcel, described by metes and bounds and bordering U.S. Highway No. 1, should be "free of any and all restrictions." The deed provided further, however, that the 67.65 acre "balance of the property herein conveyed is sold subject to . . . conditions and restrictions which shall operate as covenants running with the title to the land." The listed restrictions were similar to those contained in the various Belle Haven dedications; included were these two pertinent restrictions:

> "1. That all houses upon the premises hereby conveyed shall be built and used for residence purposes exclusively, except that garages may be built for use in connection with said residence.

> "2. That no trade, business, manufacture or nuisance of any kind or character shall be maintained or permitted upon said premises."

Between 1952 and 1954, Helen Olmi subdivided parts of the 67.65-acre parcel into several new sections of Belle Haven, subjecting the lots so formed to restrictions similar to those contained in her deed of acquisition. In the same period, Mrs. Olmi conveyed from the 67.65-acre parcel a number of lots subject to restrictions. Included were conveyances of lots to purchasers who were the predecessors in title to present complainants Roche, Rowan, and Gregory.[2]

On October 20, 1954, Belle Haven Realty Corporation, grantor in the 1952 deed to Helen Olmi, executed a "Deed of Correction and Vacation." This instrument recited that the 1952 deed erroneously had failed to exempt from the restrictions therein imposed all the land the parties had intended to exempt. Accordingly, the "correction" deed conveyed to Helen Olmi "free of any and all restrictions" both the 6.8185-acre parcel exempted in the 1952 deed and an additional, adjoining tract described by metes and bounds as containing 5.5134 acres, making a total of 12.3319 acres purportedly exempted from restrictions. The 1954 "correction" deed did

---

[2]The property of the other complainants is also included within the boundaries of the 67.65-acre parcel.

not include as parties, however, the owners of those lots that theretofore had been conveyed by Helen Olmi from the restricted 67.65-acre parcel.

By deed dated June 30, 1972, Helen Olmi conveyed to the defendant the tract of land upon which the disputed automotive sales and service center is proposed to be built. This tract is composed of the two unsubdivided parcels purportedly exempted from restrictions by the 1952 and 1954 deeds to Helen Olmi, less a portion acquired for highway improvement. The defendant's deed was made subject only to "easements of record." In the hearing below, however, a preliminary report of title that had been received by the defendant was admitted into evidence to show that the defendant "was given notice of the restrictive covenants."

This brings us to the complainants' first contention, *viz.*, that the trial court erred in refusing to hold that the defendant's entire tract was subject to an implied covenant restricting its use to residential purposes. Such a covenant, sometimes referred to as an "implied reciprocal negative easement" or an "equitable servitude," arises, the complainants say, when a common grantor develops land for sale in lots and pursues a course of conduct which indicates an intention to follow a general scheme of development for the benefit of himself and his purchasers and, in numerous conveyances of the lots, imposes substantially uniform restrictions, conditions, and covenants relating to use of the property. The right thus arising, the complainants assert, permits a grantee to enforce similar restrictions against the part of the tract retained by the grantor or against any lot subsequently sold without the restrictions to a purchaser with actual or constructive notice of the restrictions.

Their evidence, the complainants argue, established conclusively an intention by the developer of Belle Haven to adopt a general scheme and plan for development of the entire tract, including the defendant's property, as an exclusively residential subdivision. Therefore, the complainants maintain, under this court's decisions in Cheatham v. Taylor, 148 Va. 26, 138 S.E. 545 (1927), Minner v. City of Lynchburg, 204 Va. 180, 129 S.E.2d 673 (1963), and Mid-State Equipment Co. v. Bell, 217 Va. 133, 225 S.E.2d 877 (1976), the trial court was bound to "impose and enforce an implied restrictive covenant [against commercial use] upon all of the land" of the defendant.

It is true that, in the cases cited, we recognized and applied the doctrine of implied reciprocal negative easements, with the result in each instance that injunctive relief was awarded to prohibit a use that would have been contrary to a restriction found to exist as part of a general scheme of development. But none of the cited cases involved the sort of piecemeal development that is reflected in the present record.

As has been noted, Belle Haven was developed in stages, the various sections having been created from time to time over a period of many years by the recordation of a number of deeds of dedication and plats.[3] We believe that each of these recordings created a separate and distinct subdivision, with its own set of restrictions benefiting and burdening only the land in that particular subdivision. While the restrictions imposed in each dedication were similar to those applicable to other sections of the development, the course of conduct pursued by the developer did not indicate an intention to establish, as among the owners of lots in the different sections, reciprocal benefits and obligations entitling the owner of property in one section to enforce a restriction against the owner of property in another section. *See Meagher* v. *Appalachian Power Co.*, 195 Va. 138, 149, 77 S.E.2d 461, 467 (1953).

Neither does the single 1952 deed from Belle Haven Realty Corporation to Helen Olmi evidence a course of conduct, indicating an intention to follow a general scheme of development of the land thereby conveyed, from which there may be implied a covenant restricting to residential use the 6.8185-acre portion subsequently sold without restrictions. Indeed, as will be demonstrated later, the clearly expressed intention of the parties to the 1952 deed was to exempt the 6.8185-acre parcel from restrictions. Thus, under the circumstances of this case, what may be implied must give way to what is actually expressed.

We conclude, therefore, that this is not a proper situation for the application of the doctrine of implied reciprocal negative easements, and we reject the complainants' contention that an implied

---

[3]In addition to these recorded plats, the complainants placed in the record and have relied upon several other plats. These latter documents purport to show a composite of the various sections of Belle Haven created as of particular dates (1927 and 1935) and to depict the actual or proposed development of the entire Belle Haven tract for residential purposes as of another date (1930). None of these latter plats, however, contains any restrictions or other limitations upon the use of the land shown thereon, none was ever recorded, and, so far as the record shows, none was ever displayed to prospective purchasers.

restrictive covenant prohibits commercial use of all the defendant's land. This brings us to the complainants' alternate contention that *part* of the defendant's land is subject to an *express* restriction prohibiting commercial use of that part.

In this phase of the matter, the complainants' burden was not, as the defendant asserts, to prove the same case that they were required to prove in attempting to show the existence of an implied restriction, *viz.*, the duty of proving the "intent of the common grantor to establish a common building scheme for the mutual benefit of all grantees *together with* the reliance of subsequent grantees on that scheme and the expectation of enforcing those restrictions."

This phase of the matter involves express restrictions whose existence is undisputed, whose meaning is clear and unambiguous, and whose beneficiaries are easily identifiable. The debate concerns the question whether the residential restrictions are applicable to any part of the defendant's property. The burden of the complainants was to carry the affirmative of that question. *Riordan* v. *Hale,* 215 Va. 638, 641, 212 S.E.2d 65, 67 (1975). If the burden was met, it was the duty of the trial court "'to give effect to the plain intention of the parties, in imposing such restrictions.'" *Whitehurst* v. *Burgess,* 130 Va. 572, 578, 107 S.E. 630, 632 (1921).

At this point, we focus our attention upon the 1952 deed from Belle Haven Realty Corporation to Helen Olmi, the 1954 "correction" deed involving the same parties, and the intervening conveyances from Helen Olmi to the predecessors in title of complainants Roche, Rowan, and Gregory. It is these transactions that determine the answer to the question whether the express residential restrictions are applicable to any part of the defendant's property.

We believe that the 1952 deed to Helen Olmi, by its terms, evidences the clear intention to exempt from restrictions the 6.8185-acre portion of the land that is now owned by the defendant. But, just as plainly, the deed displays the intention to impose restrictions upon the balance of the land thereby conveyed. From this restricted balance, there were first conveyed, so far as pertinent here, the lots now owned by complainants Roche, Rowan, and Gregory. These conveyances bestowed upon the purchasers and the subsequent owners of those lots certain benefits and imposed upon them certain burdens. One of the benefits, in the form of a property right, was the right to enforce the

restrictions against other owners of parts of the restricted balance. *Traylor* v. *Holloway*, 206 Va. 257, 261, 142 S.E.2d 521, 523 (1965); *Meagher* v. *Appalachian Power Co., supra,* 195 Va. at 144-45, 77 S.E.2d at 464-65.

■Next, from the restricted balance, there was conveyed, so far as pertinent here, the 5.5134-acre portion of the land that is now owned by the defendant. At this point, there can be no doubt that this conveyance bestowed upon the defendant the right to enforce the restrictions against other owners of parts of the balance of the land restricted by the 1952 Belle Haven-Olmi deed. Neither can there be any doubt, however, that the 5.5134-acre tract was subject to the burden of the restrictions.

■The defendant says, however, that the inclusion of the 5.5134-acre tract in the area restricted was a mistake and that the mistake was corrected by the 1954 Belle Haven-Olmi deed. It is this 1954 deed, the defendant asserts, that displays the true intention of the parties to the 1952 conveyance to exempt from the restrictions not just part but all the land now owned by the defendant. The correction deed, therefore, the defendant maintains, should be held to speak as of the time of the 1952 deed and to extinguish all restrictions upon its land.

We do not believe, however, that the restrictions upon the 5.5134-acre portion of the defendant's land could be extinguished "without so much as a 'by-your-leave'" of the other owners of portions of the land restricted by the 1952 deed. *Booker* v. *Old Dominion Land Co.,* 188 Va. 143, 152, 49 S.E.2d 314, 319 (1948). As the complainants point out, the 1954 correction deed does not even appear in the chains of title of the lots owned by complainants Roche, Rowan, and Gregory. We believe, therefore, that the rights of the owners of lots conveyed from the restricted land in the interim between the 1952 and 1954 deeds could have been eliminated only if those owners had united in the 1954 correction deed or had been made parties to a suit resulting in a decree conforming the 1952 deed to what the defendant now says was its true intent. In the absence of either of these eventualities,[4] except as between the actual parties to the 1952 deed, the restrictions remained enforceable against the 5.5134-acre tract. *Hein* v. *Lee,* 549 P.2d 286, 292 (Wyo. 1976), *citing Genske* v. *Jensen,* 188 Wis. 17, 19-20, 205 N.W. 548, 549 (1925).

---

[4]The restrictions themselves provide no method for their release or abrogation.

■ The defendant argues, however, that it would be unreasonable to enforce restrictions limiting any part of its land to residential use. Location, topography, soil conditions, and economic considerations, the defendant asserts, render the land useless and valueless for residential development. To enforce the residential restrictions, the defendant maintains, would amount to confiscation of the property for the benefit of the complainants.

There can be no doubt, however, that a restriction against commercial use of land is reasonable. *Booker* v. *Old Dominion Land Co., supra,* 188 Va. at 147, 49 S.E.2d at 316. Furthermore, all the drawbacks to residential development of the land in question were known at the time the residential restrictions were imposed. We fail to see, therefore, how reasonableness *vel non* is an issue in this case.

Equity does recognize that a restriction, reasonable when imposed, may become unreasonable and, therefore, unenforceable because of a change of conditions. *Deitrick* v. *Leadbetter,* 175 Va 170, 177, 8 S.E.2d 276, 279 (1940). But a claim of changed conditions is not the basis of the theory espoused by the defendant; indeed, the defendant specifically disavowed this theory in the trial court.

■ We hold that the restrictions contained in the 1952 deed from Belle Haven Realty Corporation to Helen Olmi are enforceable by injunction, at the suit of complainants Roche, Rowan, and Gregory, against the 5.5134-acre portion of the land owned by the defendant. For the failure to enforce the restrictions to this extent, the decree of the trial court will be reversed, the complainants' bill will be reinstated, and the cause will be remanded for the entry of a decree awarding the injunctive relief here indicated. In all other respects, the decree of the trial court will be affirmed.

*Affirmed in part,*
*reversed in part,*
*and remanded.*