488 A.2d 186

**Betty E. BERNUI**

v.

**TANTALLON CONTROL COMMITTEE, et al.**

**No. 710, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Feb. 15, 1985.

Richard A. Kramer, Oxon Hill, for appellant.

Robert H. Silberman, Temple Hills, for appellees.

Argued before BISHOP, ADKINS and GETTY, JJ.

BISHOP, Judge.

Betty E. Bernui appeals an order of the Circuit Court for Prince George's County which permanently enjoined her from proceeding with the construction of a home because its plans and specifications did not meet the requirements of the general plan of development for the community. The subject of the dispute is a portion of a lot, conveyed without restrictions, located in the restricted residential development referred to generally as the "Tantallon" community. Appellant asks whether the chancellor erred when he found that the "Tantallon" covenants constituted a uniform general plan of development to which her lot was subject and that appellant's plans did not meet the requirements of those covenants.

## FACTS

In January 1963, as part of its plan to develop the "Tantallon on the Potomac" subdivision in Prince George's County, the Isle of Thye Land Company recorded a "Declaration of Covenants" regarding certain blocks of lots contained on several subdivision plats. The declaration provided, *inter alia*, that (1) no one-story residential structure shall be constructed which has a habitable floor area of less than 1,800 square feet, exclusive of basements, porches, patios and garages, (2) no structure shall be erected which does not have a garage under the residence, or a closed garage attached to the dwelling or connected by a breezeway, and (3) no improvement shall be erected unless its

"cost, type and size" have been approved, in writing, by the "Tantallon Control Committee" (appellee).

In May 1968, as part of its plan to develop the "Tantallon Hills" subdivision, located near "Tantallon on the Potomac", the Tantallon Country Club, Inc., recorded a "Declaration of Covenants" which adopted by reference the conditions in the "Tantallon" declaration described above. The declaration detailed the various lots covered by the adopted covenants.

In December 1968, the Tantallon Country Club, Inc. acquired a nine acre parcel of land located adjacent to the "Tantallon Hills" subdivision. In May 1983, appellant purchased her lot, in the "Plat Seven, Tantallon Hills" subdivision. That lot included land which had initially been subject to the restrictions as well as land which was a part of the parcel acquired in December 1968, which was not explicitly subject to the restrictions.

The parties stipulated that (1) the May 1968 "Declaration of Covenants" affects only that portion of appellant's lot north of (above) the dotted line on the following diagram; (2) there are no covenants of record affecting the portion of the appellant's lot south of (below) the dotted line; and (3) appellant's home was to be constructed south of the dotted line.

Appellant was aware that the "Tantallon" Community in general was subject to restrictive covenants regarding the construction of homes, but was told by the real estate brokers, prior to her purchase and at settlement, that her lot was not subject to any of these restrictions. There were no restrictive covenants in appellant's deed.

In June 1983, appellant prepared to put a modular home on the lot. In the middle of September, after she had started construction, appellant was notified by a Mr. Benson, who identified himself as the president of the Tantallon Control Committee (appellee) that her lot was subject to restrictive covenants and that she could not proceed with construction unless she got approval from the appellee. By that time, the engineering work, excavation and grading had been completed, the walls were under construction and appellant had spent approximately $9,336.00 in the process.

On September 16, appellant received a letter from Gary R. Alexander, an attorney representing adjacent and nearby property owners, the Tantallon Citizens Association, and the appellee, which stated that he had been advised that the property was subject to restrictive covenants and specified that "the proposed house does not meet the square footage requirements, garage requirements, and other covenants." Mr. Alexander's letter also stated that he had been authorized to take any legal steps necessary to insure compliance with the covenants.

Appellant submitted a set of building plans to the appellee. She was notified by letter that her "request for construction" was denied because the plans and specifications (1) did not provide for a double car garage, and (2) provided for only 1,175 square feet of living space, exclusive of basements, porches, patios and garages, which fell "unacceptably short" of the required 1,800 square feet. When appellant proceeded with construction of the home in accordance with those plans, appellee filed a bill of complaint for the injunction which was granted by the circuit court.

### Discussion

In *McKenrick v. Savings Bank*, 174 Md. 118, 197 A. 580 (1938), the Court summarized the law regarding uniform general plans of development of land, and the enforcement of restrictions on the use of land, subject to those general plans:

... one owning a tract of land, in granting a part thereof, may validly impose upon the part granted restrictions upon the use thereof for the benefit of the part retained, and upon the part retained for the benefit of the part granted, or upon both for the benefit of both; that, where the covenants in the conveyance are not expressly for or on behalf of the grantor, his heirs and assigns, they are personal and will not run with the land, but that, if in such a case it appears that it was the intention of the grantors that the restrictions were part of a uniform general scheme or plan of development and use which should affect the land granted and the land retained alike, they may be enforced in equity; that covenants creating restrictions are to be construed strictly in favor of the freedom of the land, and against the person in whose favor they are made; and that the burden is upon one seeking to enforce such restrictions, where they are not specifically expressed in a deed, to show by clear and satisfactory proof that the common grantor intended that they should affect the land retained as a part of a uniform general scheme of development.

174 Md. at 128, 197 A. 580. In *Steuart Transp. Co. v. Ashe*, 269 Md. 74, 304 A.2d 788 (1973), the Court explained that since "the intention to establish a uniform scheme or plan of development is a question of fact...." the chancellor's findings will not be set aside " 'on the evidence unless clearly erroneous' after giving due regard to the opportunity of the chancellor 'to judge the credibility of the witnesses.' " 269 Md. at 89, 304 A.2d 788. *See* Rule 1086. Furthermore, the appellate Court will not "reverse the chancellor's conclusions from the facts found by him if within the provisions of the applicable law unless they are clearly in error." 269 Md. at 89, 304 A.2d 788.

In the case *sub judice,* the chancellor found that the parcel of land upon which appellant's house was being built is not subject to the restrictive covenants. He added, however, that there is a general plan of development for the community, that the "basic plan covers the lots in ... [the

community] that are not covered by the restrictive covenants," and that "the plan basically is the covenants, even though the covenants don't apply...." In support, the chancellor relied upon the facts that most of the lots in the community were subject to the restrictive covenants, and that everyone in the community adhered to them.

We hold that as a matter of law, these facts do not establish that the parcel of land at issue is governed by the restrictions of a general scheme. *See, Steuart Transp. Co. v. Ashe,* 269 Md. 74, 304 A.2d 788 (1973); *Turner v. Brocato,* 206 Md. 336, 111 A.2d 855 (1955).

In *Turner v. Brocato,* 206 Md. 336, 111 A.2d 855 (1954) homeowners in a residential development whose lots were subject to restrictions against use for business brought an action to obtain a declaration that the appellee's lot was part of the development and, as such, was similarly restricted even though there were no restrictions in appellee's deed. 206 Md. at 336, 345–46, 111 A.2d 855. In that case, the developer of the "Poplar Hill" community prepared a plat of his entire forty-seven acre tract which identified thirty-eight lots as Section A, thirty-seven lots as Section B, and the remaining portion of the tract as Section C which was not subdivided into lots until a few years later. *Id.* at 340, 111 A.2d 855. When Section C was developed, a revised plat was prepared which did not show division of the tract into sections, but identified twelve additional lots in the area which had been designated as Section C. *Id.* at 341, 111 A.2d 855. All of the lots in the tract, except for three lots in Section C, were sold subject to the "Poplar Hill" restrictions which included a restriction against use for business purposes. *Id.* at 342, 111 A.2d 855. The subject of the dispute was a portion of a "finger of land" contained in original Section C, unnumbered on all of the plats, which was conveyed without restrictions. *Id.* at 341, 111 A.2d 855.

On the question of whether that property was part of the development, the Court concluded that

the finger of land was a part of Poplar Hill and a part of Section C. It was part of the tract ... [the developer] bought. It was shown as part of the development on all of the plats. The sign advertising Poplar Hill as a restricted residential development stood for twenty years on this very lot. The evidence of the case seems to leave no doubt that it was always regarded by those who dealt with the property as a part thereof. The fact that it was unnumbered would not seem to be decisive.

*Id.* at 345, 111 A.2d 855.

The Court also held that the lot was subject to the restrictions even though conveyed without them because the developer intended "to bind all the land in Poplar Hill by restrictions similar to those imposed, in substantial uniformity on each lot sold." *Id.* at 349, 111 A.2d 855. According to the Court,

This is not a case where the only evidence of a general plan is the imposition of restrictions in each deed, which has been held insufficient. Here, the appellants have met the burden of proof as to a general plan of development by clear and satisfactory evidence. This being so, the principle that doubt must be resolved in favor of the alienability of land, free and unfettered, does not control.

*Id.* at 352, 111 A.2d 855. The evidence relied upon by the Court included 1) restrictions imposed by most of the deeds, 2) the testimony by the owners in the community that they bought believing that all of Poplar Hill was restricted, 3) the sign at the entrance of the property that identified Poplar Hill as a "restricted community," and 4) the use of the phrase "Poplar Hill restrictions" in the contracts of sale and conversations of salesmen. *Id.* at 349–50, 111 A.2d 855.

In the case *sub judice*, the evidence did not permit the trial court to make the threshold determination made in *Turner*—that the parcel of land at issue was part of the development for which the general scheme was established. The portion of the lot in dispute was not part of the original tract owned by the developer and identified by the declara-

tion of covenants. The declaration of covenants did not restrict the parcel at issue which was subsequently acquired.

II American Law of Property § 9.35 (1952) addresses the extension of the doctrine of equitable servitudes to after acquired property and states that the most common situation likely to arise in the future regarding evidence of an intention to extend restrictions to after acquired property

is where a subdivider plats a restricted subdivision and commences to sell lots subject to uniform restrictions, but does not as yet own all of the land in his subdivision. Then, if he subsequently acquires the remaining vacant land in the subdivision, his express agreement that all of the lots will be sold subject to the same restrictions or an implied reciprocal servitude may be enforced against subsequent grantees with notice of this after-acquired land. But if the plat of the subdivision does not clearly show the intention of the subdivider to make the after-acquired area subject to the restrictions, then no implied equitable servitude will be raised against this after-acquired area merely to complete the uniformity of the subdivision.

Id. at p. 437.

No evidence was presented below which indicated that the subsequently acquired parcel of land was included as a part of the developement in the original plats, or that the original plats show that the developer intended to restrict after acquired property. To the contrary, the evidence establishes that the "Tantallon" community was developed in stages and that each stage of development created a separate and distinct subdivision, with its own set of restrictions applicable as a general scheme only in that particular subdivision. *See, Duvall v. Ford Leasing Develop. Corp.*, 220 Va. 36, 255 S.E.2d 470, 473 (1979). The parcel at issue here is not a part of either of the two subdivisions which were expressly subject to the restrictive covenants.

Finally, many other factors were established in *Turner*, indicating a general plan of development which encom-

passed the parcel at issue, which were not established below. In that case, the deeds for most of the lots in the subdivision imposed the restriction, and there were several objective manifestations of intent, including a sign located on the lot at issue which identified the community as a "restricted" development. 206 Md. at 345, 349–50, 111 A.2d 855.

The Court in *Steuart Transp. Co. v. Ashe,* 269 Md. 74, 304 A.2d 788 (1973), held that the chancellor was not clearly erroneous in finding a general plan of development when the developer of a tract of land imposed restrictions upon the lots in a subdivision by filing a "dedicatory supplement" which stated the restrictions and identified the subject property by referring to the plat of the subdivision. 269 Md. at 76, 79–80, 304 A.2d 788. In that case, however, the lots which were the subject of the dispute were part of the subdivision for which the plat was filed, and were identified thereon. *Id.* at 75, 79, 100, 304 A.2d 788. Furthermore, the deeds for the first two conveyances from the subdivision set out the restrictions and referred to both the plat and the "dedicatory supplement." *Id.* at 81–83, 304 A.2d 788. In affirming the chancellor's decree which held that the lots at issue were subject to the restrictions even though the deed conveying them did not contain the restrictive covenants, the Court stated that the appellants were bound by the equitable servitudes in the property, and that "the chancellor properly ruled that appellants had constructive notice of the restrictions applicable to the lots ..." because of the recorded plat, dedicatory supplement, and the prior deeds which adopted the restrictions and referred to the plat. *Id.* at 90–91, 304 A.2d 788.

As we have already stated, no evidence was presented in the case *sub judice* which identified the parcel of land at issue as a part of the subdivision which was subject to the declaration of covenants. Furthermore, no evidence was presented that other deeds from the "Plat Seven, Tantallon Hills" subdivision set out the restrictions, or referred to the other plats or declarations of covenants.

The chancellor had no basis for concluding that the lots which were not subject to the declaration of covenants were subject to the restrictions of a general scheme of development. The declaration of covenants detailed the property subject to the restrictions. It did not restrict the parcel at issue which was subsequently acquired, and neither the declaration nor any plat of the development purports to restrict after acquired property. Finally, there is no declaration regarding the "Plat Seven, Tantallon Hills" subdivision, and the plat for that subdivision does not adopt, refer to, or acknowledge the declaration which governs the other subdivisions in the community.

INJUNCTION VACATED; JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEES.