Opinion issued April 15, 2014



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-12-00825-CV

—————————————

**COUNTRY COMMUNITY TIMBERLAKE VILLAGE, L.P., CHARLES AND JUDITH CAYLEY, DENNIS AND TIFFANY DILLARD, JIM AND TINA DILLARD, TODD AND SAMANTHA DOWNING, KENNETH AND PENNY EDWARDS, STEWART AND KELLI GUSS, RICK AND DONNA HAWRYLAK, LEONARD AND ROBBIE HIGGINS, ET AL., Appellants**

**V.**

**HMW SPECIAL UTILITY DISTRICT OF HARRIS AND MONTGOMERY COUNTIES, Appellee**

On Appeal from the County Civil Court at Law No. 1
Harris County, Texas
Trial Court Case No. 912,608

**O P I N I O N**

This appeal concerns the acquisition of a piece of real property outside a gated subdivision by a special utility district for use as a utility site and the condemnation of a deed restriction affecting that property. At trial, a jury awarded various individual homeowners, including the developer, in the adjacent subdivision damages for the reduction in value each suffered due to the condemnation. The homeowners and the developer appeal, and the utility district cross-appeals. We hold that the homeowners and the developer lack standing and therefore vacate the judgment of the trial court and dismiss the case.

## Background

This appeal concerns Timberlake Village, a gated subdivision in northwest Harris County, Texas, developed by Country Community Timberlake Village, L.P. ("Country Community"). Country Community created the subdivision in May 2002 by subdividing a 143.5-acre tract of land. Timberlake Village consists of eighty-five residential lots to the north of the entry gate, where each of the individual Appellants resides, and fourteen lots outside the entry gate along Loblolly Lane, the entry road to Timberlake Village, the owners of which did not participate in the lawsuit. The subdivision is subject to a variety of covenants, conditions, and restrictions, which were set forth in a declaration recorded by Country Community (the "Subdivision Declaration"). To help administer the

2

covenants, conditions, and restrictions, Country Community created a homeowners association, Timberlake Village Homeowners Association, Inc. ("TVHA").

In addition to the 143.5-acre tract that became Timberlake Village, Country Community also owned a 3.9332-acre tract on Loblolly Lane. This smaller tract (the "Small Tract") was not subdivided or made part of Timberlake Village, although Country Community imposed certain covenants, conditions, and restrictions on the Small Tract (the "Small Tract Declaration") in October 2002.

The Small Tract Declaration includes the following recitals, which inform much of the parties' argument in this appeal:

> WHEREAS, Declarant [Country Community] desires to provide and adopt a set of conditions, covenants, and restrictions designed to govern, control, and preserve the value of the Property and *to preserve the value of property located within Timberlake Village*; for the development, improvement, sale, use, and enjoyment of the Property and property located within Timberlake Village; and
> WHEREAS, Declarant desires to subject the Property to the conditions, covenants, and restrictions hereinafter set forth, for the benefit of the owners of the Property and for the benefit of owners of property located within Timberlake Village; and
>
> NOW, THEREFORE, Declarant hereby declares that the Property shall be developed, improved, sold, used, and enjoyed in accordance with, and subject to the following conditions, covenants, and restrictions herein set forth, all of which are hereby adopted for, and *placed upon said Property* and shall run with the Property and be binding on all parties, now and at anytime [sic] hereinafter, *having or claiming any right, title, or interest in the Property* or any part thereof, their heirs, executors, administrators, successors, and assigns, regardless of the source of, or the manner in which any such right, title, or interest is or may be acquired, and *shall inure to the benefit of each Owner of any part of the Property*.

3

(emphasis added).  The Small Tract Declaration defines "Property" to mean the 3.9332-acre tract, which it describes by metes and bounds.  It defines "Owner" as "an owner of any portion of the Property."  It also defines "Timberlake Village" as "TimberLake [sic] Village Subdivision located in Harris County, Texas, and described by Declaration of Covenants[,] Conditions, and Restrictions for TimberLake Village filed of record at Clerk's File No. V896592, Real Property Records, Harris County, Texas."

The Small Tract Declaration restricts use of the 3.9332-acre tract to residential purposes.  Article III, Section I, captioned "Deed Restriction Enforcement," provides:

> (1)  <u>Remedies</u>:
> Every Owner shall comply with all provisions of this Declaration, and any amendments or supplements to any of the foregoing.  Failure to comply shall be grounds for an action to recover sums due, for damages or injunctive relief, or for any other remedy available at law or in equity.
> (2)  <u>Enforcement by Owners</u>:
> Each Owner is empowered to enforce this Declaration.

The Small Tract Declaration also provides that, if the smaller tract was subdivided, any subdivided portions of the Small Tract would become subject to additional covenants, conditions, and restrictions, such as subjecting any proposed construction on the subdivided portions to review by the subdivision's Architectural Review Committee.  Even after subdivision of the Small Tract,

4

however, only owners of the Small Tract or lots subdivided from it would have power to enforce these additional covenants, conditions, and restrictions.

HMW Special Utility District of Harris and Montgomery Counties, a Texas water district, provides retail water service to customers in Harris and Montgomery Counties, including residents of Timberlake Village and adjacent subdivisions.

In 2008, HMW purchased 0.2105 acres of the Small Tract from Donald and Nancy Tucker, who owned the Small Tract at the time. HMW intended to use this 0.2105-acre tract as a utility site and has since constructed a small water plant on the site. Because this use would have violated the residential-use restriction in the Small Tract Declaration, HMW filed a petition to condemn that restriction as it applied to the 0.2105 acres that HMW had purchased. As defendant, HMW named TVHA.

The trial court appointed special commissioners pursuant to Section 21.014 of the Texas Property Code. The special commissioners held a hearing to determine the value of the condemned deed restriction, at which TVHA did not appear, and awarded TVHA $4,600 as compensation. *See* TEX. PROP. CODE ANN. § 21.015 (West Supp. 2013); *id.* § 21.016 (West Supp. 2013). TVHA appealed that decision to the trial court, pursuant to Section 21.018 of the Property Code. TVHA also sought the joinder of all of the property owners in the subdivision, which the trial court ordered. The trial court eventually dismissed the

5

counterclaims of eighty of the defendants for want of prosecution, but did not dismiss the declaratory judgment claims against those defendants. The remaining defendants were Country Community (the developer), TVHA (which did not own any property in Timberlake Village), and 30 homeowners; between them, Country Community and the homeowners owned a total of 33 tracts in Timberlake Village. The homeowners and Country Community own properties located at varying distances of approximately 1,800 feet to one mile from the utility site.

By the time of trial, the parties had amended their pleadings multiple times. HMW sought a declaratory judgment (1) that neither the homeowners nor TVHA held any deed restriction or other property interest permitting the recovery of condemnation damages under Section 21.042(d) of the Texas Property Code or other applicable law and (2) that, pursuant to the Property Code, TVHA was the designated representative of the homeowners and had acted for them in that capacity.

By their counterclaims, the defendants each sought damages for the diminution in market value of their respective properties. The trial court submitted only one question to the jury: "What is the difference, if any, between the fair market value of the property in Timberlake Village owned by the individuals named below immediately before HMW condemned the deed restrictions at issue and immediately after HMW condemned the deed restrictions at issue? Answer in

'Dollars and Cents' for each of the following owners." The jury awarded $1,000 in damages for each of the subject properties.

Both sides appealed. The homeowners and Country Community appealed, arguing that the trial court erred in admitting the testimony of HMW's real estate appraisal expert and that the jury's verdict of $1,000 per property owner was manifestly inadequate and not supported by the evidence at trial or, alternatively, was against the great weight and preponderance of the evidence presented.

In its cross-appeal, HMW raises five issues: (1) whether the homeowners and Country Community have standing to recover damages for condemnation of deed restrictions on property in which they have no property interest; (2) whether the damages are precluded by law; (3) whether the homeowners' expert's testimony was properly admitted; (4) whether any evidence supports the judgment; and (5) whether legally and factually sufficient evidence supports the judgment.

## Standing

Because standing is a threshold issue, we address it first. *Douglas v. Delp*, 987 S.W.2d 879, 883 (Tex. 1999).

### A. Standard of Review

"Whether a party has standing to maintain a suit is a question of law, which we review de novo." *Hobbs v. Van Stavern*, 249 S.W.3d 1, 3 (Tex. App.—

7

Houston [1st Dist.] 2006, pet. denied) (citing *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004)).

**B.     Substantive Law**

"Standing is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000) (citation omitted). "In order for any person to maintain a suit it is necessary that he have standing to litigate the matters in issue." *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984). "Standing consists of some interest peculiar to the person individually and not as a member of the general public." *Id.* Standing may be raised by a party for the first time on appeal or may be considered by the court *sua sponte*. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993). Standing cannot be waived or conferred by agreement. *Id.*; *Green Tree Servicing, LLC v. Woods*, 388 S.W.3d 785, 790 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

A party seeking affirmative relief must allege facts in his or her pleading that "affirmatively demonstrate the court's jurisdiction to hear the cause." *Tex. Ass'n of Bus.*, 852 S.W.2d at 446 (citing *Richardson v. First Nat'l Life Ins. Co.*, 419 S.W.2d 836, 839 (Tex. 1967)); *see also In re S.M.D.*, 329 S.W.3d 8, 13 (Tex. App.—San Antonio 2010, pet. dism'd) ("The burden of proof on the issue of standing is on the party asserting standing."). Courts must consider evidence

8

relevant to jurisdiction, however, when doing so is necessary to resolve a challenge to the trial court's jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 223 (Tex. 2004); *Bland*, 34 S.W.3d at 555.

In disputes over deed restrictions, a person has standing to enforce the restriction only upon showing that the restriction was intended to inure to his or her benefit. *Calvary Temple v. Taylor*, 288 S.W.2d 868, 870 (Tex. Civ. App.—Galveston 1956, no writ); *see also Wasson Interests, Ltd. v. Adams*, 405 S.W.3d 971, 974 (Tex. App.—Tyler 2013, no pet.) (where city leased parcel of land to lessee and conveyed second parcel across road from first parcel subject to restrictions, restriction was for city's benefit, and lessee of first parcel lacked standing to enforce restriction against owner of second parcel); *Ski Masters of Tex., LLC v. Heinemeyer*, 269 S.W.3d 662, 668–69 (Tex. App.—San Antonio 2008, no pet.) (standing depends on privity of contract or existence of a common plan or scheme applicable to restricted property and property owned by party seeking enforcement); *McCart v. Cain*, 416 S.W.2d 463, 465 (Tex. Civ. App.—Fort Worth 1967, writ ref'd n.r.e.) (party claiming restriction must show that restriction exists and is for the benefit of his land).

The seminal case regarding enforcement of restrictive covenants by persons who were not party to the covenants at issue is *Hooper v. Lottman*, 171 S.W. 270 (Tex. Civ. App.—El Paso 1914, no writ). *See Evans v. Pollock*, 796 S.W.2d 465,

9

466 (Tex. 1990) (describing *Hooper* as "[t]he leading Texas case" in this area); *Curlee v. Walker*, 244 S.W. 497, 498 (Tex. 1922) (quoting *Hooper* at length as correctly stating the law). When a grantor subdivides his land, imposing covenants and restrictions that run with the land, and conveys it to various grantees, each grantee may enforce those covenants if they were part of a general plan or scheme of development for the entire parcel that was part of the inducement for purchasers to obtain land within the restricted area. *Hooper*, 171 S.W. at 272; *see also Ski Masters*, 269 S.W.3d at 669. "Such a plan may be established in various ways, such as by express covenant, by implication from a filed map, or by parol representations made in sales brochures, maps, advertising, and oral statements on which the purchaser relied in making his purchase." *Lehmann v. Wallace*, 510 S.W.2d 675, 680 (Tex. App.—San Antonio 1974, writ ref'd n.r.e.).

On the other hand, it is well settled that a restriction on a piece of property may not be enforced by one who owns land not subject to the restriction, absent privity of contract or a general plan or scheme of development applicable to the land that the plaintiff does own. *Wasson Interests*, 405 S.W.3d at 974 (restrictive covenant is not enforceable solely due to common source of title, but requires either privity of contract or a general plan or scheme of development); *Sills v. Excel Servs., Inc.*, 617 S.W.2d 280, 284 (Tex. App.—Tyler 1981, no writ) (tract outside of subdivision was not subject to restrictive covenants imposed on

10

subdivision); *Nelson v. Flache*, 487 S.W.2d 843, 846 (Tex. App.—Amarillo 1972, writ ref'd n.r.e.) ("It is well settled that property owners of one subdivision of an addition have no standing to enforce the restrictive covenants applicable to separate and distinct subdivisions." (citation omitted)); *Jobe v. Watkins*, 458 S.W.2d 945, 948 (Tex. App.—Fort Worth 1970, writ ref'd n.r.e.) ("property owners in one subdivision of an addition have no standing in court to enforce deed restrictions imposed on property located in a separate and distinct subdivision"); *Moody v. City of Univ. Park*, 278 S.W.2d 912, 923 (Tex. App.—Dallas 1955, writ ref'd n.r.e.) ("Property owners in another subdivision have no standing to enforce deed restrictions imposed upon property in a separate and distinct subdivision."); *Russell Realty Co. v. Hall*, 233 S.W. 996, 999 (Tex. Civ. App.—Dallas 1921, writ dism'd w.o.j.) (when developer subdivided a single parcel of land in two sections by filing two plats, imposing deed restrictions on first section, buyers of lots in second section had no standing to enforce deed restrictions on first section).

To establish the existence of a general plan or scheme of development, the party seeking to enforce deed restrictions must establish that

> [1] a common grantor [2] develop[ed] a tract of land [3] for sale in lots and [4] pursue[d] a course of conduct which indicates that he intends to inaugurate a general scheme or plan of development [5] for the benefit of himself and the purchasers of the various lots, and [6] by numerous conveyances [7] inserts in the deeds substantially uniform restrictions, conditions and covenants against the use of the property . . . .

11

*Evans*, 796 S.W.2d at 466 (quoting *Minner v. City of Lynchburg*, 129 S.E.2d 673, 679 (Va. 1963)); *see also Burns v. Wood*, No. B–3537, 1973 WL 142567, at *2 (Tex. 1973) (identifying "the elements of a general scheme or plan" as the requirement that "each conveyance of a lot . . . contain or carry adequate reference to the recorded restrictions," the burdening of each lot with the restrictions for the benefit of each other lot, and the right of each lot owner to enforce the restrictions against the other lots). When the developer's actions satisfy all of these requirements, "the grantees acquire by implication an equitable right, variously referred to as an implied reciprocal negative easement or an equitable servitude, to enforce *similar restrictions* against *that part of the tract* retained by the grantor or subsequently sold without the restrictions to *a purchaser with actual or constructive notice of the restrictions and covenants*." *Evans*, 796 S.W.2d at 466 (quoting *Minner*, 129 S.E.2d at 679) (emphasis added). "The most common test of the existence of a general building or neighborhood scheme is an intent that the protection of the restrictive covenant inure to the benefit of the purchasers of the lots in the tract." *Lehmann*, 510 S.W.2d at 680. "Such an intent is said to arise from representations as to the restrictions made for the purpose of inducing the purchaser of the several lots to pay higher prices because of the restrictions." *Id.*

We analyze restrictive covenants in a deed by applying the general rules of contract interpretation. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). If

a restrictive covenant is unambiguous, a court may not subject it to further judicial interpretation. *Id.*; *Monsanto Co. v. Tyrrell*, 537 S.W.2d 135, 137 (Tex. Civ. App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.). Whether a restrictive covenant is ambiguous is a question of law, which we must resolve by examining the covenants as a whole in light of the circumstances present when the parties entered the agreement. *Pilarcik*, 966 S.W.2d at 478.

Recitals in a contract do not control the operative clauses of the contract unless the latter are ambiguous. *Furmanite Worldwide, Inc. v. NextCorp, Ltd.*, 339 S.W.3d 326, 336 (Tex. App.—Dallas 2011, no pet.); *McMahan v. Greenwood*, 108 S.W.3d 467, 484 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (quoting BLACK'S LAW DICTIONARY 1270 (6th ed. 1990)) (defining "recital" as "[t]he formal statement or setting forth of some matter of fact in any deed or writing, in order to explain the *reasons* upon which the transaction is founded"); *Gardner v. Smith*, 168 S.W.2d 278, 280 (Tex. Civ. App.—Beaumont 1942, no writ). Whenever possible, the recitals should be reconciled with the operative clauses and given effect, unless they cannot be so harmonized, in which case unambiguous operative clauses will prevail. *Gardner*, 168 S.W.2d at 280. "In other words, recitals, especially when ambiguous, cannot control the clearly expressed stipulations of the parties; and where the recitals are broader than the contract

stipulations, the former will not extend the latter." *Id.*; *see also Furmanite Worldwide*, 339 S.W.3d at 336.

**C.    Analysis**

HMW asserts that Country Community and the homeowners lack standing to sue for damages for the condemnation of the residential-use restriction in the Small Tract Declaration, because none of them owns any part of the Small Tract or has any property right in it. Country Community and the homeowners argue that they have standing because recitals in the Small Tract Declaration reflect that the Small Tract's restrictions "were created for their benefit."

The parties do not dispute that the 143.5-acre parcel that became Timberlake Village and the 3.9332-acre parcel adjacent to Timberlake Village are distinct pieces of property and that each is subject to certain deed restrictions, including a residential-use restriction. But different instruments impose the restrictions on each parcel, and the restrictions are substantively different in myriad ways. The Subdivision Declaration gives TVHA and all owners of property within the subdivision the right to enforce the deed restrictions applicable to the subdivision. The Small Tract Declaration gives only owners of the Small Tract or a portion thereof the power to enforce the restrictions applicable to the Small Tract. Neither Country Community nor any of the homeowners owns any portion of the Small Tract. Rather, their properties are located within the subdivision.

To establish the existence of a general plan or scheme applicable to both the Small Tract and the subdivision, Country Community and the homeowners bear the burden of showing, among other facts, that Country Community "develop[ed] a tract of land for sale in lots . . . and by numerous conveyances insert[ed] in the deeds substantially uniform restrictions, conditions and covenants against the use of the property." *Evans*, 796 S.W.2d at 466 (quoting *Minner*, 129 S.E.2d at 679). Country Community and the homeowners have not met this burden in their pleadings, or in the evidence presented at trial. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446; *Miranda*, 133 S.W.3d at 223; *Bland*, 34 S.W.3d at 555; *In re S.M.D.*, 329 S.W.3d at 13. On the contrary, the pleadings and evidence at trial established the opposite of these elements of a general plan or scheme. Country Community did not develop "a tract of land," but two tracts of land. One such tract, the Small Tract, was never subdivided into lots. And the restrictions, conditions, and covenants governing the Small Tract and the subdivision were not "substantially uniform," but differed in many respects.

As the Supreme Court has explained, the imposition of restrictions on only one piece of property or one portion of a larger parcel is evidence of a general scheme covering only the restricted land. *Evans*, 796 S.W.2d at 472 & n.2. Examining the law of numerous other states, the Court explained that only the land specifically restricted is subject to restrictive covenants, and those covenants

15

benefit only the land so restricted. *Id.* When a landowner imposes different conditions on different portions of his land or subdivides the land in stages, "for purposes of the implied reciprocal negative easement doctrine, each separate recording create[s] a separate and distinct subdivision with its own set of restrictions benefiting and burdening only the land in that particular subdivision." *See id.* (citing with approval *Duvall v. Ford Leasing Dev. Corp.*, 255 S.E.2d 470, 473 (Va. 1979); *Bernui v. Tantallon Control Comm.*, 488 A.2d 186, 191 (Md. Ct. Spec. App. 1985)).

Accordingly, we conclude that the Small Tract was not part of a general plan or scheme of development such as would bring it within the exception to the general rule that requires privity of contract. *Hooper*, 171 S.W. at 272; *Ski Masters*, 269 S.W.3d at 669.

We turn next to the contention that Country Community and the homeowners may enforce the residential-use restriction because the recitals in the Small Tract Declaration indicate that the restriction was intended for the benefit of owners of land in the subdivision. *E.g.*, *Ski Masters*, 269 S.W.3d at 668–69. The recitals in the Small Tract Declaration state that Country Community:

- "desires to provide and adopt a set of conditions, covenants, and restrictions designed to govern, control, and preserve the value of the Property and to preserve the value of property located within Timberlake Village; for the development, improvement, sale, use, and enjoyment of *the Property and property located within Timberlake Village*." (emphasis added).

16

- "desires to subject the Property to the conditions, covenants, and restrictions hereinafter set forth, *for the benefit of the owners of the Property and for the benefit of owners of property located within Timberlake Village*." (emphasis added).

But the operative provisions of the Small Tract Declaration make no mention of property located within Timberlake Village or owners thereof.

In other words, the Small Tract Declaration gives the owners of property in Timberlake Village no rights whatsoever. The paragraph immediately after the recitals states: "NOW, THEREFORE, Declarant hereby declares that the Property shall be . . . subject to the following conditions, covenants, and restrictions . . . all of which . . . *shall inure to the benefit of each Owner of any part of the Property*." (emphasis added). The Small Tract Declaration defines "Owner" as one owning all or part of the Small Tract, and does not include owners of property in the subdivision.

Further, the Small Tract Declaration confers the power to enforce the restrictions in the Small Tract Declaration only to owners of the 3.9332-acre tract or portions thereof. In this regard, it states: "Each Owner [of the Small Tract or a portion thereof] is empowered to enforce this Declaration."

It is clear from the recitals that Country Community's desire to benefit the homeowners in the subdivision was a reason the grantor executed the Small Tract Declaration. But whatever the grantor's motivation, the plain language of the Small Tract Declaration created property rights only with respect to owners of the

Small Tract or portions thereof. First, it states that the benefits it creates "shall inure" or take effect only to the benefit of those owners, but does not mention owners of property in the subdivision. *See* BLACK'S LAW DICTIONARY 900 (9th ed. 2009) (defining "inure" as "to take effect; to come into use"). The omission of any mention of the Timberlake Village property owners from this provision raises a presumption that the parties did not mean to confer a legal benefit on owners of property within the subdivision. *CKB & Assocs., Inc. v. Moore McCormack Petroleum, Inc.*, 734 S.W.2d 653, 655 (Tex. 1987); *Calvary Temple*, 288 S.W.2d at 874 (such an omission is "strongly probative" and raises a "presumption . . . that the restrictions were inserted in the deeds for the benefit alone of the owners of [the identified] property"). Second, the enforcement provision likewise indicates that the Timberlake Village owners may not enforce the Small Tract Declaration. And these operative provisions of the Small Tract Declaration are unambiguous.

The recitals, which reflect the intent to benefit property owners within Timberlake Village, cannot control the operative clauses of the Small Tract Declaration. *Gardner*, 168 S.W.2d at 280; *see also Furmanite Worldwide*, 339 S.W.3d at 336. Nor can they enlarge the operative clauses. *Gardner*, 168 S.W.2d at 280; *Furmanite Worldwide*, 339 S.W.3d at 336. Where the document's enforcement clause provides unambiguously for a means of enforcement of the document's terms, we cannot read a recital to enlarge that power or vest power in

18

individuals not named. We therefore hold that the homeowners have no property interest in the Small Tract and therefore lack standing to enforce the Small Tract Declaration's terms. The same logic applies to Country Community; although it recorded the Small Tract Declaration, it no longer holds any property or interest in the Small Tract, and nothing in the Small Tract Declaration reserves for Country Community any right of enforcement in the absence of such ownership.[1] Accordingly, we hold that neither Country Community nor the homeowners have standing to recover damages for the condemnation of the residential-use restriction applicable to the Small Tract.[2]

Our interpretation of the Small Tract Declaration is consistent with Texas law regarding enforcement of restrictive covenants in comparable circumstances. Texas courts have often held that landowners may not enforce deed restrictions applicable to another's property, absent privity of contract or a demonstration that both parcels are part of a common, general plan or scheme for their development.

---

[1] Further, Country Community did not seek to recover damages in its capacity as original grantor of the small tract, but rather in its capacity as an owner of land within the subdivision.

[2] Country Community and the homeowners also argue that their status as defendants, rather than plaintiffs, is evidence of their standing to defend against HMW's claims *and* of their standing to bring claims against HMW for damages. But neither the alignment of the parties—who originally sued whom—nor any action by HMW is sufficient to confer standing on Country Community and the homeowners if it is otherwise lacking. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993); *Green Tree Servicing, LLC v. Woods*, 388 S.W.3d 785, 790 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Accordingly, we reject Country Community and the homeowners' contention that their status as defendants gives them standing.

*E.g.*, *Wasson Interests*, 405 S.W.3d at 974; *Sills*, 617 S.W.2d at 284; *Nelson*, 487 S.W.2d at 846; *Jobe*, 458 S.W.2d at 948; *Moody*, 278 S.W.2d at 923; *Russell Realty*, 233 S.W. at 999.

The cases upon which Country Community and the homeowners rely are distinguishable. Country Community and the homeowners cite *City of Heath v. Duncan*, 152 S.W.3d 147 (Tex. App.—Dallas 2004, pet. denied), *Harris County Flood Control District v. Glenbrook Patiohome Owners Ass'n*, 933 S.W.2d 570 (Tex. App.—Houston [1st Dist.] 1996, writ denied), and *City of Houston v. McCarthy*, 464 S.W.2d 381 (Tex. App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.). In each of these cases, the governmental authority and the parties seeking damages owned property within a single subdivision; thus, each property was subject to the same restrictions. *City of Heath*, 152 S.W.3d at 149 (city owned property within same subdivision as homeowners, and all properties at issue were subject to same residential-use restrictions); *Glenbrook*, 933 S.W.2d at 573 (flood control district purchased 20 patiohomes within subdivision, which it sought to destroy, and sought to condemn portion of common area within subdivision); *McCarthy*, 464 S.W.2d at 382–83 (city purchased land from grantors, who imposed use restrictions, then sought to condemn additional land owned by grantors). Country Community and the homeowners, by contrast, bear the burden to establish that the residential-use restriction in the Small Tract Declaration was

imposed for the benefit of their land. *Webb v. Voga*, 316 S.W.3d 809, 813 (Tex. App.—Dallas 2010, no pet.). They have not met this burden.

Nor does *Calvary Temple*, discussed above, compel a different result. 288 S.W.2d at 870. In that case, all of the parties owned land within a subdivision on which restrictive covenants had been imposed, limiting all of the lots to residential use. *Id.* at 869–70. Each deed, however, contained an enforcement provision stating, "It shall be lawful for any person owning land fronting on ____ Street . . . to institute and prosecute appropriate proceedings" for breach of the covenants. *Id.* at 870. In each deed, the space shown as a blank in the foregoing quotation contained the name of the street on which the property conveyed fronted as shown by the plat or map. *Id.* The appellant, which sought to build a church on lots fronting on Ross Street (now West Alabama Street), sought to dissolve a temporary injunction preventing the construction of the church. *Id.* The appellant argued that, at the time of the motion to dissolve the injunction, none of the appellees owned property fronting on Ross Street, and thus none had the right to enforce the deed restriction applicable to the subject lots. *Id.* We held that the trial court did not err in refusing to dissolve the injunction, based on the procedural posture of the case and the appellant's failure to present evidence sufficient to overturn the injunction. *Id.* at 874. Our holding was premised on the fact that all of the parties to *Calvary Temple* owned land subject to the restrictions and thus potentially

subject to a general plan for development, which is not the case here. *Id.* at 873–74.

We sustain HMW's first issue. Because our resolution of the standing question is dispositive, we do not reach HMW's remaining issues or the issues presented by Country Community and the homeowners.

## Conclusion

We vacate the judgment of the trial court and dismiss the case. We dismiss all pending motions as moot.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.