**Dorothy LaNelle TAYLOR, et al., Appellants,**

v.

**John M. SHELTON, III, et al., Appellees.**

**No. 07–88–0183–CV.**

Court of Appeals of Texas, Amarillo.

May 31, 1989.

Rehearing Denied June 26, 1989.

Robert W. Johnson, Jr., Matthews & Branscomb, Corpus Christi, for appellants.

Wayne P. Sturdivant, Jeffrey G. Shrader, David L. LeBas, Gibson, Ochsner & Adkins, Amarillo, for appellees.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

Dorothy LaNelle Taylor and others,[1] collectively referred to as the Taylors, perfected this appeal from a summary judgment decreeing, in the main, their specific performance of a written agreement for the purchase of oil and casinghead property located in Moore and Potter Counties. The judgment was rendered upon a motion therefor filed by John M. Shelton, III and others,[2] collectively referred to as the Shelton parties.

Upon the rationale expressed, we determine that the Shelton parties did not establish their right to the summary judgment

---

1. Appellants, named as defendants in the suit below, are Dorothy LaNelle Taylor, individually, Dorothy LaNelle Taylor, Shelby Lynn Taylor and Ricky Gene Taylor, Independent Co-executors of the Estate of Gordon S. Taylor, Deceased, and Dorothy LaNelle Taylor, Shelby Lynn Taylor and Ricky Gene Taylor, Trustees of the Testamentary Trust created under the last will and testament of Gordon S. Taylor, Deceased.

2. Appellees, the institutors of the suit, are John M. Shelton, III, individually and as Trustee of the Betty Jim Smith Trust, Betty Jim Smith McBride, individually and as Trustee of the Betty Jim Smith Trust, Julie Smith, Elizabeth Smith Boston, and Janie Talmadge Smith.

rendered. Accordingly, we reverse and remand.

In November of 1984, the Shelton parties, together with Howard F. Saunders and W.H. Brian as Trustees of the Sanders & Scott Mineral Trust,[3] agreed in writing to sell, and Gordon S. Taylor, to whose interests the Taylors have succeeded, agreed to purchase a divided one-half of the oil and casinghead gas estates underlying land described in a designated assignment. The agreement provided that the divided one-half

> shall be identified by dividing the total of the lands described in the ... Assignment, into 80–acre tracts, rectangular in shape and 1320 feet by 2640 feet in configuration as near as possible and numbered consecutively, with the even or odd numbered tracts to be the divided one-half of the lands described in the ... Assignment.

Provision was included for the Shelton parties to cause the land to be surveyed, laid out in 80–acre tracts, consecutively numbered and, when accomplished, that

> [Gordon S. Taylor] shall select by lot the even or odd numbered 80–acre tracts of land and any lesser tracts that cannot be as much as 80 acres, which even or odd numbered tracts become the divided one-half interest in the lands described in the ... Assignment, which are the subject matter of this sale.

The consideration for the purchase was recited as seven hundred dollars ($700) per net mineral acre of the mineral rights acquired by Taylor.

The agreement specified that the title to the property shall be merchantable. In this regard, the agreement set timetables for the delivery of the abstract of title, for a report on the condition of the title, and for meeting title objections in the report. Another specification was that if the Shelton parties are unable to comply with the title requirement within the time designated or any extension thereof, and the defects are not waived, "this contract shall be null and void for every purpose."

Gordon S. Taylor died testate on 29 June 1985 without having consummated the purchase. Later, alleging that they had performed under the agreement and all occurrences and conditions precedent had occurred, but that Gordon S. Taylor and the Taylors refused to complete the purchase, the Shelton parties instituted this litigation to require the Taylors to perform the agreement and purchase the property.

Afterwards, the Shelton parties moved for summary judgment on the pleadings and two supporting affidavits. The ground stated in the motion was the executed agreement, aided by a copy of the agreement and allegations that the Shelton parties had performed all obligations required of them by the agreement, but that the Taylors had not selected the tracts as they were required to do.

One accompanying affidavit was executed by Howard F. Saunders, Jr., an attorney who stated, in regard to the transaction, that he assisted in the negotiation of the sale and the preparation of the agreement, that $700 would be for every net acre conveyed, that the Shelton parties had performed all obligations required of them by the agreement, and that neither Gordon S. Taylor nor the Taylors ever selected the odd or even portions of the checkerboard tracts. The other affidavit was executed by an attorney, who opined that a reasonable attorney's fee, for which the Shelton parties had pleaded, was $10,000.

The Taylors responded to the motion with allegations that "there are a great number of genuine issues as to material facts existing in this case which cause [the Shelton parties] not to be entitled to their requested Summary Judgment." In particular, the Taylors alleged that the Shelton parties "did not meet the requirements of their agreement in that they were never able, within the time allowed, to furnish a merchantable title to the property in question." The Taylors supported their response with an affidavit executed by J.R. Lovell, an attorney who was employed by Gordon S. Taylor to assist in the negotiations for the purchase of the property.

3. These Trustees are not parties to this litigation.

In his affidavit, Lovell, asserting that the title to the property was not merchantable, set forth several respects in which the title was not merchantable, particularly because of conflicting claims to the oil and casinghead gas. He stated that the title deficiencies had not been corrected within the time agreed or after an extension thereof, and he declared that for that reason the agreement, by its own terms, became null and void.

Lovell further asserted that the Shelton parties did not perform the obligations required of them by the agreement because they did not cause the title to be merchantable. He added that the $10,000 attorney's fees submitted is not a reasonable fee.

Subsequently, the Shelton parties filed a second affidavit by attorney Saunders addressing the title to the property. Noting that in the agreement, the signatories did "recognize that another holds a valid and subsisting gas lease on the property subject to this sales agreement," Saunders stated that Amarillo Oil Company "acquired ownership of the leasehold interests in and to the gas and gas rights established under the lease ... the only oil and gas lease covering the Land." He also documented the corrective instruments and actions respecting objections to other claims of the oil and casinghead gas.

Eight days before the date set for hearing the motion for summary judgment, the Taylors filed a second response to the motion. They excepted to the Saunders affidavit accompanying the motion in two respects: it was made by an interested witness and was inconsistent with the Lovell affidavit; and the statement therein that "[t]he sellers performed all obligations required of them by the Agreement" was a conclusion on his part and not admissible summary judgment evidence. They also included the bare allegation that there are genuine issues of material fact which preclude the granting of summary judgment.

On 5 August 1987, the trial court heard the motion for summary judgment, and the court's docket has an entry by that date in these words: "Motion for S/J for Specific Performance is granted, with exception of the issue on atty fee." Subsequently, but before the court signed a judgment, the Taylors moved for a dismissal of the litigation for lack of jurisdiction. They represented that the Gordon S. Taylor estate was being administered in the County Court of Moore County, which had exclusive jurisdiction of the subject matter, and that the failure to join the Trustees of the Sanders & Scott Mineral Trust, who were necessary and indispensable parties, deprived the court of jurisdiction. The Shelton parties joined the issue.

Thereafter, the court's judgment was reduced to written form and signed on 1 February 1988. Reciting that the motion for summary judgment was heard on 5 August 1987, and finding that with the exception of attorney's fees and costs, the motion should be granted because there are no genuine issues as to any material facts, the court effected a severance of the claims for attorney's fees and costs, and recorded its judgment. By the judgment, the court decreed a specific performance of the agreement.

Specifically, the court ordered that the Taylors purchase from the Shelton parties a divided one-half interest in the oil and casinghead gas estates underlying the property, authorizing the Taylors to choose odd or even numbered tracts of land depicted on the map attached to the judgment on or before 2 October 1987 and, in lieu of a choice, deeming them to choose the odd numbered tracts of land. In doing so, the court recited that "[t]he tracts of land in question are described in the Agreement of Sale, and total 2,726.018 acres," and ordered that the purchase price, on the basis of $700 per net acre conveyed, is $954,-106.30. The court also included orders for the payment and delivery of the deed, and, in lieu of timely payment by the Taylors, for judgment against them for $954,106.30.

The Taylors timely moved for a new trial. In their motion, they advanced the theories that the Shelton parties failed to produce sufficient competent summary judgment evidence to support the judgment, that the evidence the court relied upon was improper, and that the court

lacked jurisdiction for the reasons given in their earlier motion to dismiss.

The Shelton parties disputed the Taylors' theories for a new trial, and then moved the court to modify, correct and reform its judgment. They requested that the judgment be modified to expressly overrule the Taylors' motion to dismiss, be modified and corrected to allow for pre- and post-judgment interest, and be modified, reformed, and corrected to update the times for performance.

Afterwards on 15 April 1988, the court signed a reformed final judgment, vacating the previous judgment except for the previous order of severance. The reformed judgment reiterated the same orders for specific performance of the agreement, but changed the dates of performance to "on or before 30 June 1988." Further, the court overruled the Taylors' motions to dismiss for lack of subject matter jurisdiction and for a new trial, and decreed recovery by the Shelton parties of postjudgment interest at the rate of 10% per annum from the date of judgment until paid.

Again, the Taylors moved for a new trial on the same theories previously advanced. After the court overruled the motion, the Taylors perfected this appeal.

The Taylors have advanced 19 points of error. However, we need not address all of them to reach a proper disposition of the appeal.

At the outset, we must notice the twelfth point, by which the Taylors contend the trial court lacked jurisdiction of the subject matter. Jurisdiction is fundamental and it may not be ignored. *Marshall v. Brown,* 635 S.W.2d 578, 580 (Tex.App.—Amarillo 1982, writ ref'd n.r.e.).

■ The Taylors submit that the court erred in overruling their plea of lack of jurisdiction of the subject matter, because the exclusive jurisdiction of the subject matter is with the Probate Court of Moore County, where the estate of Gordon S. Taylor, the sole purchaser who signed the agreement, was being administered. We are not persuaded to credit the point.

If the Taylors were to defeat the motion for summary judgment because of the lack of the court's subject-matter jurisdiction, the objection to the jurisdiction should have been before the court in writing at the hearing of the motion. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 677 (Tex.1979). It is undisputed that the question of the court's lack of jurisdiction was not raised by the Taylors until after the hearing.

Nevertheless, since jurisdiction is fundamental, the lack of jurisdiction can be questioned at any time. *Tullos v. Eaton Corp.,* 695 S.W.2d 568 (Tex.1985). In this connection, it long has been established that the acts of a court of general jurisdiction, as is the trial court in this cause, are presumed to be within the jurisdiction of the court. *Houston Tap & B.R. Co. v. Randolph,* 24 Tex. 317, 333 (1859). Since the Taylors asserted the lack of jurisdiction of the trial court, which is not revealed by the record, they had the burden of establishing that assertion. *Miller v. Miller,* 575 S.W.2d 594, 596 (Tex.Civ.App.—El Paso 1978, no writ).

However, the Taylors concede in their brief that "neither Plaintiff nor Defendant have [*sic*] produced any summary judgment evidence that would show that the probate proceeding is pending in Moore County." Without such proof, their mere averment of lack of jurisdiction is insufficient to establish that the trial court lacked jurisdiction, *Graves v. First Nat. Bank,* 77 Tex. 555, 14 S.W. 163 (1890), for it is conclusively presumed that all facts not appearing of record were found by the court in favor of its jurisdiction. *Hannon v. Henson,* 15 S.W.2d 579, 585 (Tex.Comm'n App.1929). The twelfth point is overruled.

■ It is appropriate that we notice the eleventh point, by which the Taylors contend the court erred in granting summary judgment for specific performance, because of the absence of the Trustees of the Sanders & Scott Mineral Trust, who executed the agreement and are necessary and indispensable parties. Again, we are not persuaded to credit the point.

The Taylors' contention is one that they were required to raise by a verified plea filed in the trial court. Tex.R.Civ.P. 93(4). Instead, they joined the issues without the requisite verified complaint of a defect of parties; indeed, they did not raise the issue until after the court heard and orally announced the granting of the motion for summary judgment. As a result, any defect of parties, which was not fundamental error, was waived, thereby foreclosing appellate review of the contention. *Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex.1982). The eleventh point is overruled.

Initially, in attacking the court's rendition of summary judgment, the Taylors contend that there is no summary judgment evidence to support the judgment for $954,106.30. With their second point, they contend the finding that the property contains 2,726.018 acres of land is unsupported by the summary judgment evidence. By their third point, they contend that the court erred in incorporating in its judgment the map containing the checker-boarding scheme which was not a part of the summary judgment evidence. And under their seventh point, they contend, in particular, that there is no evidence the title objections were cured within the time permitted.

The primary response of the Shelton parties is that the Taylors have waived these contentions. The waiver occurred, they propose, because of two circumstances. They alleged the performance and occurrence of all conditions precedent, and the first affidavit of Saunders submitted in support of their motion for summary judgment alleged that they "performed all obligations required of them by the Agreement." Although the Taylors' first response to the motion and Lovell's affidavit stated that they, the Shelton parties, did not meet the requirements of their agreement in that they were never able, within the time allowed, to furnish a merchantable title to the property, the Taylors did not deny specifically any other occurrences or performances due under the contract. This means, the Shelton parties conclude, that all issues related to the property description issue are taken as having been performed or having occurred. The conclusion is founded on Rule 54, Texas Rules of Civil Procedure, and its application to summary judgment cases by *Sunbelt Const. Corp. v. S & D Mechanical*, 668 S.W.2d 415 (Tex. App.—Corpus Christi 1983, writ ref'd n.r. e.), and *Hill v. Thompson & Knight*, 756 S.W.2d 824 (Tex.App.—Dallas 1988, no writ).

Rule 54, *supra*, does provide that when a party has pleaded generally that all conditions precedent have been performed or have occurred, the party shall be required to prove only such of them as are specifically denied by the opposite party. And the *Sunbelt Const. Corp.* and *Hill* courts did apply the rule to particular aspects of the summary judgment proceedings before them.

■ Nevertheless, Rule 54, *supra*, is placed among those procedural rules governing the pleadings in a conventional trial, whereas the summary judgment procedure is a pre-trial procedure governed by Rule 166a, Texas Rules of Civil Procedure, which is not an open invitation to procedural experimentation. *Richards v. Allen*, 402 S.W.2d 158, 160 (Tex.1966). Pursuant to the summary judgment rule,

> [t]he judgment sought shall be rendered forthwith if (i) the deposition transcripts, interrogatory answers, and other discovery responses referenced or set forth in the motion or response, and (ii) the pleadings, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, on file at the time of the hearing, or filed thereafter and before judgment with permission of the court, show that, except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response.

Tex.R.Civ.P. 166a(c). Thus, in a summary judgment proceeding, neither the pleadings nor the non-movant's failure to answer or respond furnishes the summary judgment proof necessary to establish the moving party's right to judgment; "[t]he movant

still must establish his entitlement to a summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of his cause of action or defense as a matter of law." *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d at 678.

But, in any event, the reliance on Rule 54, *supra,* does not enable the Shelton parties to overcome the Taylors' first, second, third, and seventh contentions in this summary judgment proceeding. As applicable to the agreement, a condition precedent is an act to be performed, or the happening of an event, before the agreement becomes binding on the parties. In this sense, and as material to the Taylors' contentions, only the survey and the curing of the title objections were conditions precedent; the fixing of the net mineral acres and price for them, at $700 per acre, are matters of summary judgment proof.

■ With respect to the curing of the title objections, the first Saunders affidavit does contain the statement that the Shelton parties performed all obligations required of them by the agreement. Yet, the statement is contradicted by the Lovell affidavit's statement that the title objections had not been corrected within the time agreed or within the extension granted, a matter not addressed in the second Saunders affidavit concerning the curative title actions. Aside from the question whether both statements are pure conclusions and not competent summary judgment evidence, a claim the Taylors lodged against the Saunders affidavit, *see Mercer v. Daoran Corp.,* 676 S.W.2d 580, 583 (Tex.1984), the statements at least conflict on the material fact issue whether the Shelton parties had timely performed the curative action required of them. Given this situation, the evidence tending to support the position of the Taylors, the parties opposing the motion for summary judgment, must be accepted as true for summary judgment purposes. *Farley v. Prudential Insurance Company,* 480 S.W.2d 176, 178 (Tex.1972); *Kiser v. Lemco Industries, Inc.,* 536 S.W.2d 585, 589 (Tex.Civ.App.—Amarillo 1976, no writ). With the summary judgment record in this state, the Shelton parties failed to conclusively establish that they had performed the title requirements, a condition bearing on the continuing validity of the agreement.

If it be accepted that the survey had been performed, still it is undisputed that the survey, attached to the court's judgment, was not, as Rule 166a, *supra,* requires, before the court when the motion for summary judgment was heard. The Taylors state in their brief that the checker-boarding scheme was not delivered to them until 31 August 1987, twenty-five days after the hearing. The Shelton parties do not dispute the statement; indeed, they tacitly concede that the court rendered summary judgment but delayed enforcement until a property description was provided. Then, it is considered established that the court rendered judgment without evidence of the survey. Tex.R.App.P. 74(f).

■ Beyond that, the survey (map) attached to the court's judgment does not contain a metes and bounds description, and it is devoid of any acreage calculations, either of the individual tracts or of the entire property, as well as any indication that the tracts comported to the size called for by the agreement. Consequently, the map does not evidence the acreage so as to permit a determination of the purchase price. Moreover, the summary judgment record before the court at the time of the hearing does not evidence the acreage on which the price is to be computed.

We have considered the balance of the response made by the Shelton parties to these contentions. It suffices to state that the response does not negate the verity of the contentions. Then, indulging, as we must, every reasonable inference in favor of the non-moving Taylors, *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 549 (Tex.1985), it follows that the Shelton parties did not discharge their burden to show there is no genuine issue of material fact and that they were entitled to summary judgment as a matter of law. Accordingly, we sustain the Taylors' points of error one, two, three, and seven. It be-

comes unnecessary to notice the other points of error, which are not likely to be raised, at least in the same posture, as the result of further proceedings. Tex.R. App.P. 90(a); *Cornell & Co. v. Pace,* 703 S.W.2d 398, 404 (Tex.App.—Amarillo 1986, writ ref'd n.r.e.).

The judgment is reversed and the cause is remanded to the trial court.