BCH Dev. Corp. v. Bee Creek Hills Neighborhood Assn 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00416-CV







BCH Development Corporation, Appellant



v.



Bee Creek Hills Neighborhood Association, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT


NO. 93-05664, HONORABLE JOSEPH H. HART, JUDGE PRESIDING








 Appellee Bee Creek Hills Neighborhood Association ("the neighborhood association"),
consisting of the owners of four lots in the Bee Creek Hills subdivision, sued the developer of the
subdivision, appellant BCH Development Corporation ("the developer"), seeking to enjoin the developer's
nonresidential use of one subdivision lot as being in violation of restrictive covenants. The developer
counterclaimed for a declaratory judgment to determine what type of access is permitted to and from the
same lot. Following a nonjury trial, the district court concluded that all lots in the subdivision were limited
to residential use only and granted injunctive relief prohibiting the developer from any further violation of
the restrictions. In addition, the court's judgment declared that access to and from the disputed lot was not
restricted as the neighborhood association claimed. On appeal, the developer challenges the portion of the
judgment that enjoins it from any nonresidential use of the disputed lot. The neighborhood association
challenges the portion of the judgment concerning access to and from that lot. We will affirm in part and
reverse and render in part.



FACTUAL AND PROCEDURAL BACKGROUND


 The facts material to this case are, for the most part, undisputed and are reflected in various
documents filed of record in the Travis County Deed Records. In November 1981, the Talstan
Corporation filed of record a plat creating the Bee Creek Hills subdivision, consisting of thirty-five lots in
Travis County, and also recorded a set of restrictive covenants for the subdivision ("the 1981 covenants"). 
In July 1983, the Talstan Corporation sold its interest to the developer. On December 13, 1983, the
developer filed of record additional covenants and restrictions ("the 1983 covenants") applicable to the
subdivision. The parties' dispute revolves around their respective rights and duties created by these
documents.



Residential Use Only

 The first part of the dispute relates to whether the applicable covenants restrict all lots in
the subdivision to residential use only. The 1981 covenants, which applied to all lots in the subdivision,
dealt exclusively with the establishment of a homeowners association (as distinguished from appellee
"neighborhood association") and the fixing of an annual assessment to each homeowner for the purpose of
paying for "all costs and expenses of operating and maintaining certain improvements benefiting the
subdivision." Preceding the document's operative provisions, the 1981 covenants contained the following
three recital or "whereas" paragraphs:


 WHEREAS, Declarant, is the owner of the real property described in Article 2 of
this Declaration and desires to create thereon a residential subdivision known as "Bee
Creek Hills" with streets, utilities and certain other common facilities for the benefit of the
said subdivision; and


 WHEREAS, Declarant, desires to provide for the preservation of the values and
amenities in said subdivision and for the maintenance of street lights and associated facilities
located thereon, and to this end, desires to subject the real property described in Article
2 to the covenants, restrictions, easements, charges and liens hereinafter set forth, each and
all of which is and are for the benefit of said property and each owner thereof[;] and


 WHEREAS, Declarant, has deemed it desirable, for the efficient preservation of
the values, attractiveness and desirability of the lots in said subdivision administering and
enforcing certain covenants and restrictions hereinafter created . . . .



(Emphasis added.)

 The 1983 covenants began with three "whereas" paragraphs that were essentially identical
to those quoted above from the 1981 covenants. The operative provisions of the 1983 covenants
restricted applicable lots to residential use only and mandated numerous other types of building and land
use requirements and restrictions. Significantly, however, the 1983 covenants recited that the property to
which the restrictions applied was "[a]ll lots in Bee Creek Hills, SAVE AND EXCEPT LOTS 1, 2, and
29 thereof." Lots 1, 2, and 29 fronted directly onto Bee Cave Road, a four-lane, heavily traveled
thoroughfare. In 1985, lots 1 and 2 were combined to form lot 1-A, which was subsequently rezoned to
allow for "limited office" use. In recent years, lot 1-A has been used intermittently by the developer for
commercial purposes, and it is because of this use and plans for further commercial use that the
neighborhood association filed suit seeking injunctive relief.

 The trial court filed the following conclusions of law pertaining to this issue:



 9. The 1981 Restrictions and 1983 Restrictions make the subdivision and all of the lots
in the subdivision residential.


10. The 1983 Restrictions subject all lots, except 1, 2 and 29, to additional restrictions
over and above those that are imposed in the 1981 Restrictions.


11. Nothing in the 1983 Restrictions or any other document or evidence makes any of
the lots nonresidential. Rather, the 1983 Restrictions impose more specific
restrictions on all lots, other than 1, 2 and 29.


12. Lots 1 and 2, now Lot 1-A, and Lot 29 remain residential, but without these specific
restrictions that are found in the paragraphs numbered 3 through 35 of the 1983
Restrictions.


13. Defendant [the developer] has violated the residential restriction by allowing the
commercial or nonresidential use of Lot 1-A. Therefore, Defendant should be
enjoined from further violation of the residential restriction on Lot 1-A.



In addition to injunctive relief, the court awarded the neighborhood association $8,000 in attorney's fees.



Access to Lot 1-A

 The other part of the dispute between the parties involves the means of access that is
permitted to and from lot 1-A. The plat by which the subdivision was created shows lot 1 (now lot 1-A)
to be on the corner of Bee Cave Road and Cañon Wren Drive. The 1981 plat contains the following note:



Lot 1 Access Restrictions


Drive access to lot 1 shall be restricted to Cañon Wren Drive. Direct access to Bee Cave
Road shall be denied.


When lots 1 and 2 were replatted into lot 1-A in 1986, the new plat contained the following note:



1. DIRECT ACCESS FROM LOT 1-A TO BEE CAVES [sic] ROAD SHALL BE
PROHIBITED, HOWEVER, INDIRECT ACCESS FROM LOT 1-A TO BEE
CAVES ROAD SHALL BE PERMITTED THROUGH ADJACENT PROPERTY
BY MEANS OF AN EASEMENT FOR SUCH ACCESS GRANTED BY THE
OWNER OF SUCH ADJACENT PROPERTY . . . .



 Asserting that the foregoing plat notes prohibited the developer from accessing Bee Cave
Road via Cañon Wren Drive, members of the neighborhood association interfered with the developer's
attempts to construct a driveway onto Cañon Wren Drive from lot 1-A. The neighborhood association also
complained that the notes prohibited not only direct vehicular access between Bee Cave Road and lot 1-A,
but also prohibited pedestrian access. The developer counterclaimed for a declaratory judgment
construing its right of access from lot 1-A to Bee Cave Road and Cañon Wren Drive.

 The trial court filed the following conclusions of law pertaining to this issue:



14. "Direct access" to Lot 1-A from Bee Caves [sic] means direct vehicular access. 
There is no prohibition against direct pedestrian access. A preponderance of the
evidence does not support a finding that the Defendant has violated the direct access
prohibition. Therefore, the Defendant is not enjoined from violating the direct access
prohibition.

 . . . .

16. As to access to Cañon Wren Drive from Lot 1-A and then access to Bee Caves
Road, nothing in the plats, documents or other evidence prohibits access from Lot
1-A to Cañon Wren Drive and then to Bee Caves Road.



In addition to declaratory relief, the court awarded the developer $3,000 in attorney's fees.


DISCUSSION


I.  The Developer's Appeal

 In its first point of error, the developer contends the trial court erred in concluding that the
1981 and 1983 covenants restricted all lots to residential use only. Neither party pleaded in the trial court
or asserts in this Court that the covenants are ambiguous. We agree they are unambiguous; therefore, the
trial court properly treated construction thereof as a question of law. Accordingly, we are not bound by
the trial court's determination; instead, we independently evaluate any legal determination of the trial court. 
See Purvis Oil Corp. v. Hillin, 890 S.W.2d 931, 935 (Tex. App.El Paso 1994, no writ); MJR Corp.
v. B & B Vending Co., 760 S.W.2d 4, 10 (Tex. App.Dallas 1988, writ denied). For the following
reasons, we conclude that the 1981 and 1983 covenants do not restrict the lots in the subdivision to
residential use only.

 The sole phrase on which the neighborhood association relies for its contention that all lots
are restricted to residential use is contained in a "whereas" clause in the recital portion of the 1981
covenants: "Whereas, Declarant . . . desires to create thereon a residential subdivision . . . ." (1) The general
rules regarding the significance of recitals in the construction of contracts are set forth in Gardner v. Smith,
168 S.W.2d 278, 280 (Tex. Civ. App.Beaumont 1942, no writ). Although a recital may, in some
circumstances, be looked to in determining the proper construction of a contract and the parties' intention,
such a recital can govern the construction of the document only when the operative clauses are ambiguous. 
Id. Recitals, especially when unclear, cannot control the clearly expressed stipulations of the parties; and
where the recitals are broader than the contract stipulations, the former will not extend the latter. Id. A
recital phrase may not extend clearly expressed operative stipulations. Additionally, recitals are not actually
part of the document unless the parties intended them to be such. Id. The foregoing rules have been widely
recognized as the standard for construing recitals in contracts. See 17A C.J.S. Contracts § 314 (1963).

 In the present case, the operative clauses in the 1981 covenants are not ambiguous and do
not deal with land use restrictions at all. Rather, the operative clauses in the 1981 covenants show that the
declarant's intention was solely to create duties of membership and fee assessments for upkeep and repairs
in the subdivision. The manifest intention of the declarant is reflected in the specificity of the operative
clauses; therefore, the clause found in the recital cannot extend the operative clauses to include a
residential-only restriction.

 Moreover, the terms of the recital relied on by the neighborhood association are not clear
and unambiguous. Commercial use of a small number of lots, especially those lots least suited for residential
use, would not render a subdivision "nonresidential." Thus, the recital that the declarant "desires to create
a residential subdivision" is not inconsistent with the creation of a subdivision that has a relatively small
number of commercial properties, as long as the subdivision retains an essentially residential character.

 Because the recitals to the 1981 covenants do not "plainly prohibit" all commercial use, we
may not extend the recital by implication. See Couch v. Southampton Civic Club, 313 S.W.2d 360, 364
(Tex. Civ. App.Waco), aff'd, 322 S.W.2d 516 (Tex. 1958) (covenant in deed restrictions will not be
extended by implication to include anything not plainly prohibited). In comparison, the 1983 covenants
demonstrate the ease with which covenants could be drafted restricting lots to residential use only.

 Finally, although covenants restricting the free use of land will be enforced when they are
confined to lawful purposes and are clearly worded, they are not favored by the courts. Wilmoth v.
Wilcox, 734 S.W.2d 656, 657 (Tex. 1987). Thus, if there were some doubt about the significance of the
relevant recital phrase, rules of construction would require all doubts to be resolved in favor of the free and
unrestricted use of the premises, requiring that a clause imposing a restriction must be construed strictly
against the party seeking to enforce it. Id. at 657.

 For all of these reasons, we hold that lot 1-A is not restricted to residential use only, and
we sustain the developer's first point of error. In concluding that lot 1-A is not restricted to residential use
only, we also sustain the developer's second point of error that it is not subject to an injunction prohibiting
any nonresidential use of the lot.



II.  The Neighborhood Association's Cross-Appeal

 The neighborhood association, in its cross-appeal, contends the court erred in (1)
concluding that the prohibited "direct access" between lot 1-A and Bee Cave Road contained in the 1981
plat referred only to vehicular traffic; (2) failing to enjoin any direct pedestrian access between Bee Cave
Road and lot 1-A; (3) declaring that indirect access between Bee Cave Road and lot 1-A via Cañon Wren
Drive is not prohibited; (4) awarding attorney's fees for declaratory relief because all necessary parties
were not joined; and (5) determining that the neighborhood association's fees and expenses were only
$8,000.

 In its first cross-point, the neighborhood association contends that the trial court erred in
concluding that the "direct access" prohibited between lot 1-A and Bee Cave Road meant direct vehicular
access only. The association says that "direct access" mentioned in the relevant plats and other documents
before the court should be interpreted to mean all types of access, including pedestrian. We disagree. The
"access restrictions" note for lot 1 on the 1981 plat states that "drive access shall be restricted to Cañon
Wren Drive." The phrase "drive access" clearly refers to vehicular access. There is no specific restriction
on pedestrian access between lot 1-A and Bee Cave Road in this or any other document. Moreover,
because Cañon Wren Drive is specifically approved as a route for indirect vehicular access between lot
1-A and Bee Cave Road, we interpret the subsequent restriction that "direct access to Bee Cave Road
shall be denied" also to refer to vehicular access. Therefore, we agree with the trial court's interpretation
of "direct access" and overrule the neighborhood association's first cross-point. Having overruled the
association's first cross-point, we also overrule its second cross-point complaining of the trial court's failure
to grant injunctive relief.

 In its third cross-point, the neighborhood association contends the trial court erred in
declaring that indirect access between lot 1-A and Bee Cave Road is permitted via Cañon Wren Drive. 
The neighborhood association argues that the relevant plats and a 1985 reciprocal easement agreement
restrict indirect access to an adjacent tract (outside the subdivision) on the opposite side of lot 1-A from
Cañon Wren Drive.

 In September 1985, the developer signed an agreement with a group called Venture 5A
Partners, which owned a tract of land that fronted on Bee Cave Road and was adjacent to lot 1-A on the
subdivision. This "agreement regarding reciprocal easements" stated:



The easements, rights and privileges herein granted . . . shall be for the purpose of
providing free and uninterrupted use and privilege of pedestrian and vehicular ingress and
egress as follows: (a) by BCH [the developer] . . . from Bee Cave Road across the
Venture 5A Easement Area to the BCH Tract and between the Venture 5A Tract and the
BCH Tract, and (b) by Venture 5A . . . across the BCH Easement Area to the Venture
5A Tract, between the BCH Tract and the Venture 5A Tract and for emergency access
only to Cañon Wren Drive.



It is obvious that subsection (a) of the quoted portion of the agreement deals only with access of the
developer (BCH) between Bee Cave Road and the Venture 5A tract and between the Venture 5A tract
and lot 1-A; nowhere does it mention any restriction on the developer's access between lot 1-A and Cañon
Wren Drive. Subsection (b), on the other hand, grants the Venture 5A group access across lot 1-A to
Cañon Wren Drive in emergencies only. (2) The agreement does not purport to restrict the developer's
access between lot 1-A and Cañon Wren Drive. Indeed, it assumes the existence of such access.

 Moreover, although the access note on the 1985 plat refers to access by means of the
agreement with the Venture 5A group, it does not purport to restrict access between lot 1-A and Cañon
Wren Drive. Therefore, we agree with the trial court's determination that access between lot 1-A and Bee
Cave Road through Cañon Wren Drive is not restricted in any way. We overrule the neighborhood
association's third cross-point.

 The neighborhood association's fourth cross-point states: "The trial court erred in awarding
Appellant attorney's fees on its counterclaim since declaratory relief was inappropriate as all necessary
parties were not joined and the requested relief amounted to an advisory opinion." In the three-sentence
argument devoted to this cross-point, the neighborhood association contends the developer was required
to join as parties in the lawsuit "each and every owner of lots in the subdivision."

 We overrule this cross-point for the following reasons. First, the point is inadequately
briefed. Although section 37.006(a) of the Civil Practice and Remedies Code is cited, the brief neither cites
authorities nor attempts to provide any reasoning for why the other lot owners in the subdivision constitute
such indispensable parties that the action should not have been allowed to continue in their absence. This
deficiency alone authorizes us to overrule the point. See Rayburn v. Giles, 182 S.W.2d 9, 13-14 (Tex.
Civ. App.San Antonio 1944, writ ref'd); Dear v. City of Irving, 902 S.W.2d 731, 735 n.3 (Tex.
App.Austin 1995, writ denied). Second, a defect of parties must be raised in the trial court by verified
pleading. See Tex. R. Civ. P. 93(4). The neighborhood association did not raise the issue of indispensable
parties in the trial court by verified pleading and, therefore, waived the issue. See Taylor v. Shelton, 772
S.W.2d 281, 285-86 (Tex. App.Amarillo 1989, writ denied); Jackson v. Thompson, 610 S.W.2d 519,
522 (Tex. Civ. App.Houston [1st Dist.] 1980, no writ). Third, we are not convinced that the absence
of the other lot owners deprived the court of jurisdiction or otherwise constituted fundamental error. See
Pirtle v. Gregory, 629 S.W.2d 919, 920 (Tex. 1982). We overrule cross-point four.

 Finally, the neighborhood association claims in its fifth cross-point that the trial court erred
in determining that the association's reasonable and necessary attorney's fees and expenses were only
$8,000. Having sustained the developer's points of error and determined that the neighborhood association
was not entitled to judgment in its favor, we also necessarily determine that it was not entitled to any award
of attorney's fees. Thus, we need not address the neighborhood association's contention that it was entitled
to higher fees. We overrule cross-point five.


CONCLUSION


 We affirm the portions of the trial court's judgment pertaining to access between lot 1-A
and Cañon Wren Drive and Bee Cave Road and granting attorney's fees to the developer. We reverse
the portions of the judgment enjoining the developer from any nonresidential use of lot 1-A and granting
attorney's fees to the neighborhood association, and we render judgment that the neighborhood association
take nothing by its claims.



 J. Woodfin Jones, Justice

Before Justices Powers, Aboussie, and Jones

Affirmed in Part; Reversed and Rendered in Part

Filed: December 19, 1996

Do Not Publish
1.   The 1983 covenants contain a specific operative clause clearly showing the declarant's
intention to exclude lots 1, 2, and 29 from the residential-only restriction imposed by those covenants. 
Accordingly, we believe an intent to subject all lots to such a restriction must come, if at all, from the
1981 covenants, and the quoted portion of the recital to the 1981 covenants is the only provision the
neighborhood association relies on.
2.   The Venture 5A tract lies directly north of lot 1-A and it is from this area that the
agreement grants emergency access south across lot 1-A to Cañon Wren Drive.



re 5A group, it does not purport to restrict access between lot 1-A and Cañon
Wren Drive. Therefore, we agree with the trial court's determination that access between lot 1-A and Bee
Cave Road through Cañon Wren Drive is not restricted in any way. We overrule the neighborhood
association's third cross-point.

 The neighborhood association's fourth cross-point states: "The trial court erred in awarding
Appellant attorney's fees on its counterclaim since declaratory relief was inappropriate as all necessary
parties were not joined and the requested relief amounted to an advisory opinion." In the three-sentence
argument devoted to this cross-point, the neighborhood association contends the developer was required
to join as parties in the lawsuit "each and every owner of lots in the subdivision."

 We overrule this cross-point for the following reasons. First, the point is inadequately
briefed. Although section 37.006(a) of the Civil Practice and Remedies Code is cited, the brief neither cites
authorities nor attempts to provide any reasoning for why the other lot owners in the subdivision constitute
such indispensable parties that the action should not have been allowed to continue in their absence. This
deficiency alone authorizes us to overrule the point. See Rayburn v. Giles, 182 S.W.2d 9, 13-14 (Tex.
Civ. App.San Antonio 1944, writ ref'd); Dear v. City of Irving, 902 S.W.2d 731, 735 n.3 (Tex.
App.Austin 1995, writ denied). Second, a defect of parties must be raised in the trial court by verified
pleading. See Tex. R. Civ. P. 93(4). The neighborhood association did not raise the issue of indispensable
parties in the trial court by verified pleading and, therefore, waived the issue. See Taylor v. Shelton, 772
S.W.2d 281, 285-86 (Tex. App.Amarillo 1989, writ denied); Jackson v. Thompson, 610 S.W.2d 519,
522 (Tex. Civ. App.Houston [1st Dist.] 1980, no writ). Third, we are not convinced that the absence
of the other lot owners deprived the court of jurisdiction or otherwise constituted fundamental error. See
Pirtle v. Gregory, 629 S.W.2d 919, 920 (Tex. 1982). We overrule cross-point four.