

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00796-CV

**LOCKHILL VENTURES, LLC**,
Appellant

v.

**ARD MOR, INC.**; Texas Ardmor Properties, LP; and Texas Ardmore Management, LLC;
Appellees

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2014-CI-10796
Honorable Richard Price, Judge Presiding[1]

Opinion by:     Patricia O. Alvarez, Justice

Sitting:     Marialyn Barnard, Justice
             Rebeca C. Martinez, Justice
             Patricia O. Alvarez, Justice

Delivered and Filed:  July 8, 2015

REVERSED; TEMPORARY INJUNCTION DISSOLVED

This is an interlocutory appeal of an order granting a temporary injunction which enjoins

Lockhill Ventures, LLC from taking various actions relating to the construction of a convenience

store and gasoline filling station.  The temporary injunction was granted based on the trial court's

findings that the proposed development of the property would be in violation of the Declaration of

Protective Covenants to which the property was subject.  Lockhill Ventures asserts the trial court

---

[1] The Honorable Karen Pozza is the presiding judge of the 407th District Court.  The Honorable Richard Price signed the order granting the temporary injunction.

erred in granting the temporary injunction because (1) the appellees did not have standing to enforce the Declaration's restrictions and (2) Lockhill Ventures' proposed use of its property did not violate the restrictions. Lockhill Ventures also contends the order is overbroad. We reverse the trial court's order and dissolve the temporary injunction.

## BACKGROUND

In June 2014, Lockhill Ventures acquired land located at the corner of Lockhill-Selma and Huebner Road in Shavano Park, Texas. The property is subject to restrictive covenants contained in a Declaration of Protective Covenants signed and recorded by Shavano Creek Commercial Partnership Unit 1, Ltd. as the declarant to be effective as of December 14, 2007 (the 2007 Declaration).

Appellees Ard Mor, Inc.; Texas Ardmor Properties, LP; and Texas Ardmore Management, LLC (collectively Ard Mor), own property adjacent to the property acquired by Lockhill Ventures. Ard Mor has owned and operated a child care facility on its property since July 2002. Ard Mor's property is also subject to restrictive covenants contained in a Declaration of Protective Covenants signed and recorded by Shavano Creek Commercial Partnership Unit 1, Ltd. as the declarant to be effective as of October 22, 2001 (the 2001 Declaration).[2]

In July 2014, Ard Mor filed the underlying lawsuit after discovering Lockhill Ventures intended to construct a convenience store and gas station on its property. Ard Mor alleged Lockhill

---

[2] Lockhill Ventures contends the trial court could not have considered the 2001 Declaration because Ard Mor did not introduce it into evidence. We note the 2001 Declaration is included in the clerk's record filed in this appeal, and Ard Mor requested the trial court to take judicial notice of the document during its closing arguments. A court may take notice of facts "not subject to reasonable dispute." TEX. R. EVID. 201; *see MCI Sales & Serv., Inc. v. Hinton*, 329 S.W.3d 475, 485 n.7 (Tex. 2010). Lockhill Ventures does not dispute the existence of the Declaration but relies on Ard Mor's failure to introduce it into evidence at the hearing. Because Lockhill Ventures does not dispute the Declaration is a recorded document, both the trial court and this court can take judicial notice of it. TEX. R. EVID. 201; *see also Johnson v. Johnson*, No. 03-02-00427-CV, 2005 WL 3440773, at *5-6 (Tex. App.—Austin Dec. 16, 2005, no pet.) (mem. op.) (deciding court could take judicial notice of a recorded deed); *Northside Marketplace W.D. '97, Ltd. v. David Christopher, Inc.*, No. 2-03-276-CV, 2005 WL 3118794, at *4 (Tex. App.—Fort Worth Nov. 23, 2005, no pet.) (mem. op.) (taking judicial notice of a trustee's deed).

Ventures' intended use violated the 2007 Declaration of Protective Covenants and the City's zoning ordinances.[3] The trial court granted a temporary restraining order which set a hearing on Ard Mor's request for a temporary injunction. After a four-day hearing held July 23, 2014, July 30, 2014, August 7, 2014, and September 19, 2014, the trial court took the matter under advisement. On October 29, 2014, the trial court signed the order granting the temporary injunction.

In the temporary injunction order, the trial court noted that Ard Mor alleged Lockhill Ventures' planned development violated the restrictive covenants in the 2007 Declaration prohibiting the property from being used for the "[s]torage, handling, or use of explosive material." The trial court found that evidence was presented during the hearing showing "1) that gasoline vapors are explosive under certain conditions and 2) that gasoline vapors will most certainly be stored, handled, or used" on Lockhill Ventures' property "if it is allowed to be developed and operated as currently planned." The trial court further found that the issuance of a temporary injunction was appropriate to maintain the status quo pending trial on the merits. Lockhill Ventures appeals the trial court's order.

## STANDING

Lockhill Ventures contends Ard Mor lacked standing to seek the injunctive relief because Ard Mor "failed to tender or have admitted any exhibits (such as a deed), or present any testimony, demonstrating: (1) any of them own property in the vicinity of [Lockhill Ventures's] [p]roperty; (2) the identity of the person from whom [Ard Mor] allegedly acquired any real property, or that

---

[3] In appeal number 04-14-00781-CV, the City of Shavano Park challenges the trial court's denial of its plea to the jurisdiction which includes issues regarding Ard Mor's standing to challenge the zoning ordinances and a Development and Annexation Agreement entered into between the City and Lockhill Ventures. In this appeal, our discussion is limited to the Declaration of Protective Covenants because the alleged violation of the Declaration was the basis upon which the trial court granted the temporary injunction.

[Lockhill Ventures] acquired [its] [p]roperty from a common source, or that [Ard Mor] acquired their real property subject to any restrictive covenants; or (3) any of them were parties to the [Declaration of Protective Covenants], owned real property subject to [that Declaration], or were otherwise entitled to enforce [that Declaration]."

## A.     Standard of Review

Standing is an element of subject matter jurisdiction that cannot be waived and can be raised at any time, including for the first time on appeal.[4] *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993); *Myer v. Cuevas*, 119 S.W.3d 830, 833 (Tex. App.—San Antonio 2003, no pet.). Because standing is a component of subject matter jurisdiction, we review standing de novo. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004).

When the existence of jurisdictional facts are challenged in relation to subject matter jurisdiction, "we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). A trial court has discretion to decide whether the jurisdictional determination should be made at a preliminary hearing or "await a fuller development of the case, mindful that this determination must be made as soon as practicable." *Id*. In this case, the trial court exercised its discretion to determine standing by expressly stating in its order that "Plaintiffs have standing to sue Defendant Lockhill Ventures, LLC to enforce the Declaration of Protective Covenants."

---

[4] Ard Mor appears to argue that Lockhill Ventures should be precluded from challenging standing based on various actions taken during the four-day hearing. Since standing can be raised for the first time on appeal and cannot be waived, Lockhill Ventures' actions cannot affect this court's obligation to determine Ard Mor's standing. *See M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004) (noting appellate court is "obligated to review *sua sponte* issues affecting jurisdiction"); *DaimlerChyrsler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008) ("A court has no jurisdiction over a claim made by a plaintiff without standing to assert it.")

**B.      Standing to Enforce Restrictive Covenants**

"A restrictive covenant is a contractual agreement between the seller and the purchaser of real property. In ordinary circumstances, a restrictive covenant is enforceable only by the contracting parties and those in direct privity of estate with the contracting parties." *Ski Masters of Tex., LLC v. Heinemeyer*, 269 S.W.3d 662, 668 (Tex. App.—San Antonio 2008, no pet.). However, "[w]here an owner of a tract subdivides and sells the subdivided parcels to separate grantees, imposing restrictions on the use of each parcel pursuant to a general plan or scheme of development, each grantee may enforce the restrictions against each other grantee." *Id.* at 669.

A party attempting to enforce restrictive covenants based on "the existence of a general plan or scheme of development" must establish the following:

> [1] a common grantor [2] develop[ed] a tract of land [3] for sale in lots and [4] pursue[d] a course of conduct which indicates that he intends to inaugurate a general scheme or plan of development [5] for the benefit of himself and the purchasers of the various lots, and [6] by numerous conveyances [7] inserts in the deeds substantially uniform restrictions, conditions and covenants against the use of the property . . . .

*Country Cmty. Timberlake Village, L. P. v. HMW Special Util. Dist. of Harris & Montgomery Counties*, 438 S.W.3d 661, 668 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (alterations in original) (quoting *Evans v. Pollock*, 796 S.W.2d 465, 466 (Tex. 1990)). "'The most common test of the existence of a general building or neighborhood scheme is an intent that the protection of the restrictive covenant inure to the benefit of the purchasers of the lots in the tract.'" *Id.* at 669 (quoting *Lehmann v. Wallace*, 510 S.W.2d 675, 680 (Tex. Civ. App.—San Antonio 1974, writ ref'd n.r.e.)). "[T]he existence of a general plan or scheme" is a fact issue. *Ski Masters*, 269 S.W.3d at 670.

**C.      Existence of a General Plan or Scheme of Development**

Several cases discussing the existence of a general plan or scheme address an issue similar to that raised in this case. When an owner/developer owns a large tract of land and sells it for development in smaller tracts, are all of the smaller tracts bound by the same restrictions or can the owner/developer impose different restrictions on different tracts? We analyze two cases on this issue.

*1.      Evans v. Pollock*

In 1947, the Hornsbys and the McCormicks platted a subdivision around Lake Travis from their commonly owned property. *Evans v. Pollock*, 796 S.W.2d 465, 466 (Tex. 1990). "The plat itself did not state any restrictions on land-use. The plat divided the property into seven blocks designated alphabetically 'A' through 'G.'" *Id*. Blocks C, D, E, and F were not further subdivided, "but blocks A, B, and G were divided into thirty-one lots." *Id*. at 466–67. All of the thirty-one lots were lakefront lots. *Id*. at 467. Block F was located on a hill and was surrounded by the lakefront lots. *Id*.

In October 1947, the Hornsbys and McCormicks partitioned the subdivision between themselves, and over the next several years, the Hornsbys and McCormicks conveyed twenty-nine of the thirty-one lots. *Id*. at 469. Each deed contained the same restrictive covenants, including a covenant prohibiting business or commercial use of the land. *Id*.

In the partition, the Hornsbys retained Block F and lots 4 through 8 of Block G. *Id*. After the Hornsbys died, their devisees contracted to sell Block F and lots 4 and 5 of Block G to a third party who intended to build a marina, private club, and condominium development. *Id*. Some of the lakefront lot owners sued, seeking a declaration that the restrictive covenants contained in their deeds were implied on the property retained by the Hornsbys. *Id*.

In discussing the scope of the area restricted by the general plan or scheme, the Texas Supreme Court held "the general plan or scheme may be that the restrictions only apply to certain well-defined similarly situated lots." *Id*. at 471. The court then discussed both Texas cases and cases from other states supporting the conclusion that the restricted area need not be the whole subdivision nor include the whole retained tract. *Id*. at 471–72.

2.      *Country Community Timberlake Village*

a.      Subdivision

In May 2002, Country Community Timberlake Village, L.P. created a subdivision by subdividing a 143.5-acre tract of land into (1) eighty-five residential lots north of the entry gate to the gated subdivision known as Timberlake Village and (2) fourteen lots outside the entry gate on Loblolly Lane, the entry road to the subdivision. *Country Community*, 438 S.W.3d at 664. The subdivision is subject to restrictive covenants set forth in a declaration recorded by Country Community. *Id*. To assist in administering the covenants, Country Community created Timberlake Village Homeowners Association, Inc. (TVHA).

b.      Small Tract

In addition to the 143.5-acre tract, Country Community owned a 3.9332-acre tract also located on Loblolly Lane which was not subdivided or made part of Timberlake Village. *Id*. The "Small Tract" had its own set of restrictive covenants which were imposed in October 2002. *Id*. In 2008, HMW Special Utility District of Harris and Montgomery Counties purchased 0.2105 acres of the Small Tract intending to use it as a utility site and to build a small water plant on the site. *Id*. at 665–66. Because this use violated the residential-use restriction in the Small Tract's declaration, HMW filed a petition to condemn the restriction. *Id*. at 666.

The trial court appointed special commissioners to determine the value of the condemned restriction; the commissioners awarded TVHA $4,600 as compensation. *Id*. TVHA appealed that

decision to the trial court and sought to join all the property owners in the subdivision. *Id*. At the time of trial, HMW amended its pleadings to seek a declaratory judgment that neither TVHA nor the subdivision homeowners held any interest permitting recovery of condemnation damages. *Id*. After a jury awarded each homeowner $1,000 in damages and a judgment was entered, both sides appealed. *Id*.

      c.     <u>Standing in Small Tract Suit</u>

One of the issues raised by HMW on appeal was whether the homeowners and Country Community, which still owned lots in the subdivision, had standing to recover damages for the condemnation of a restrictive covenant on property to which they had no property interest. *Id*. HMW asserted Country Community and the homeowners lacked standing because they did not own any property in the Small Tract; Country Community and the homeowners asserted the restrictions on the Small Tract were also created for their benefit. *Id*. at 669. In support of their position, Country Community and the homeowners relied, in part, on (1) a recital in the declaration of the Small Tract's restrictive covenants stating that the restrictions were to preserve the value of the property in the Small Tract and the property located within Timberwalk Village and (2) a second recital that the declarant desired to impose the restrictions for the benefit of the owners of the Small Tract and the owners of property located within Timberwalk Village. *Id*. at 665, 669.

      d.     <u>General Plan or Scheme</u>

In analyzing whether the subdivision and the Small Tract were part of a general plan or scheme, the Houston court noted the two parcels were distinct pieces of property and different instruments imposed the restrictions on each parcel. *Id*. at 669. The court also noted the restrictions were substantively different. *Id*. Finally, only the owners in the subdivision were given the right to enforce the subdivision's restrictions, and only the owners in the Small Tract

were given the right to enforce the Small Tract's restrictions. *Id.* The Houston court asserted that Country Community and the homeowners did not show a general plan or scheme:

> Country Community did not develop "a tract of land," but two tracts of land. One such tract, the Small Tract, was never subdivided into lots. And the restrictions, conditions, and covenants governing the Small Tract and the subdivision were not "substantially uniform," but differed in many respects.

*Id.* at 670. Citing the Texas Supreme Court's decision in *Evans*, the Houston court emphasized, "When a landowner imposes different conditions on different portions of his land or subdivides the land in stages, . . . 'each separate recording create[s] a separate and distinct subdivision with its own set of restrictions benefiting and burdening only the land in that particular subdivision.'" *Id.* (second alteration in original) (quoting *Evans*, 796 S.W.2d at 472). Accordingly, the Houston court concluded "the Small Tract was not part of a general plan or scheme of development such as would bring it within the exception to the general rule that requires privity of contract" to have standing to enforce a restrictive covenant. *Id.*

e. Effect of Recitals

With regard to the recitals contained in the declaration, the Houston court noted "the operative provisions of the Small Tract Declaration ma[d]e no mention of property located within Timberlake Village or [the] owners thereof." *Id.* at 671. The court also noted the paragraph immediately following the recitals stated "'NOW, THEREFORE, Declarant hereby declares that the Property shall be . . . subject to the following conditions, covenants, and restrictions . . . all of which . . . *shall inure to the benefit of each Owner of any part of the Property*.'" *Id.* (alterations in original). The court further noted the declaration defined Property as the Small Tract and Owner as one owning part of the Small Tract. *Id.* Finally, the court noted the declaration stated only owners of property in the Small Tract could enforce the restrictions. *Id.* Although the Houston court recognized the recitals established that Country Community's desire to benefit the

subdivision owners was a reason for executing the Small Tract Declaration, the court concluded, "But whatever the grantor's motivation, the plain language of the Small Tract Declaration created property rights only with respect to owners of the Small Tract or portions thereof." *Id*. Because the recitals could not control over the operative clauses, the court held "neither Country Community nor the homeowners have standing to recover damages for the condemnation of the residential-use restriction applicable to the Small Tract." *Id*. at 671–72; *see also Jeansonne v. T-Mobile W. Corp*. No. 01-13-00069-CV, 2014 WL 4374118, at \*1 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (mem. op.) (affirming summary judgment based on lack of standing where adjacent tracts sold by common owner were not part of the same general plan or scheme).

**D.    Evidence of Standing**

*1.    2001 Declaration*

Ard Mor acquired property and opened a child care facility in 2002. The property obtained by Ard Mor is subject to a Declaration of Protective Covenants effective as of October 22, 2001, with Shavano Creek Commercial Partnership Unit 1, Ltd. (the 2001 Declaration). The 2001 Declaration defines the property subject to the restrictions as a 1.838-acre tract of land, and expressly references the "Cooke Plans" which included the building of the child care facility operated by Ard Mor. Similar to the recitals in *Country Community*, the 2001 Declaration recites the declarant's intention to market and develop the 1.838-acre tract and surrounding properties owned by the declarant for commercial purposes and the declarant's desire to provide for the systematic, orderly development and use of the 1.838-acre tract and the surrounding properties for the benefit of both properties. Also similar to the declaration in *Country Community*, the provision immediately following the recitals states that the restrictions are binding on all parties having a right, title, or interest in the 1.838-acre tract, and the operative provisions govern only the 1.838-acre tract. The 2001 Declaration includes thirty-three prohibited uses, and provides that the

declarant and the owners of the 1.838-acre tract shall have the right, but not the obligation, to enforce the restrictions. The declarant and the owners of two-thirds or more of the gross land in the 1.838-acre tract have the right to terminate or amend the 2001 Declaration.

*2.     2007 Declaration*

In 2007, the same declarant that signed and recorded the 2001 Declaration signed and recorded a second Declaration of Protective Covenants effective as of December 14, 2007 (the 2007 Declaration). The 2007 Declaration defines the property subject to its restrictions as a 3.079-acre tract of land. Lockhill Ventures acquired a portion of the 3.079 acres. Similar to the recitals in *Country Community*, the 2007 Declaration recites the declarant's intention to provide for the systematic, orderly development and use of the 3.079-acre tract to ensure its use and development was not incompatible with any adjoining commercial properties and residential neighborhoods. Also similar to the declaration in *Country Community*, the provision immediately following the recital states that the restrictions are binding on all parties having a right, title, or interest in the 3.079-acre tract, and the operative provisions govern only the 3.079-acre tract. The 2007 Declaration includes nine prohibited uses, and provides that the declarant shall have the right, but not the obligation, to enforce the restrictions. The declarant and the owners of two-thirds or more of the gross land in the 3.079-acre tract have the right to terminate or amend the 2007 Declaration.

### E.     Two Separate and Distinct Districts

Under *Evans* and in accordance with *Country Community*, we conclude Shavano Creek Commercial Partnership Unit 1, Ltd. "did not develop 'a tract of land,' but two tracts of land." *See Country Community*, 438 S.W.3d at 670; *see also Jeansonne*, 2014 WL 4374118, at *6 (concluding developer "developed two tracts of land, each governed by its own restrictions, conditions, and covenants"). The restrictions in the 2007 Declaration governing the 3.079-acre tract and the restrictions in the 2001 Declaration governing the 1.838-acre tract were not "substantially

uniform," but "differed in many respects," including the property bound by the restrictions, the prohibited uses, who could enforce the restrictions, and who could terminate or amend the restrictions. *See Country Community*, 438 S.W.3d at 670; *see also Jeansonne*, 2014 WL 4374118, at *6 (noting differences in enforcement provisions in each set of restrictions, conditions, and covenants). Further, the recitals "cannot control the operative clauses" of the 2007 Declaration. *See Country Community*, 438 S.W.3d at 671. Therefore, we conclude Shavano Creek Commercial Partnership Unit 1, Ltd. imposed different conditions and restrictions on different portions of land. The 2001 and 2007 Declarations created separate and distinct restricted districts, each with its own set of restrictions benefitting and burdening only the property bound by its respective declaration. *See Evans*, 796 S.W.2d at 472; *Country Community*, 438 S.W.3d at 670. Accordingly, the 1.838-acre tract and the 3.079-acre tract were not part of a general plan or scheme of development, and Ard Mor does not have standing to enforce the 2007 Declaration. *See Country Community*, 438 S.W.3d at 670; *see also Jeansonne*, 2014 WL 4374118, at *7.

## CONCLUSION

The trial court erred in determining that Ard Mor has standing to enforce the 2007 Declaration. Because the trial court's temporary injunction is based on the trial court's findings that the proposed development by Lockhill Ventures would be in violation of the 2007 Declaration, and Ard Mor lacks standing to enforce the 2007 Declaration, the trial court's order granting the temporary injunction is reversed, and the temporary injunction is dissolved.

Patricia O. Alvarez, Justice